ELIZABETH MACLAY

*v.*

JOHN HARVEY.

1. CONTRACT—*by letter, when closed.* A letter written in reply to an offer, which restates the terms of the offer, but with some variations, though slight, can not be regarded as the consummation of a contract, and requires an acceptance upon the terms thus stated, and until unequivocally accepted, is only a mere proposition or offer.

2. Where a person makes an offer by post, asking for, or where from the nature of the business he has a right to expect, an answer by return mail, the offer can only endure for a limited time, and the making of it is accompanied by an implied stipulation that the answer shall be by return mail, and if that implied stipulation is not satisfied, the person making the offer is released from it.

3. Where a person sent by letter an offer to engage the plaintiff as a trimmer in his millinery shop, asking for a prompt reply, which letter was received by the plaintiff on the 22d day of March, which she answered by postal card on the next day, accepting the offer, and which, if then mailed, would have reached the defendant on the 24th, but which she gave to a boy to mail, who neglected to mail it until the 25th, it was *held*, that the defendant was not bound by his offer, the plaintiff not having mailed notice of her acceptance in sufficient time, nor was he bound, after receiving her answer, to notify her that her acceptance had not been signified in time,—and his intention afterwards to accept her services, and attempt to see her, not having been acted on, would not change the rule of law.

4. The negligence of a party's agent in mailing her letter accepting an offer to employ the writer of the letter, is her own negligence, and the writer must bear the consequence of the delay in her agent in mailing the same.

APPEAL from the Circuit Court of Warren county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. JOHN J. GLENN, and Mr. J. M. KIRKPATRICK, for the appellant.

Messrs. STEWART, PHELPS & GRIER, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Appellant brought assumpsit against appellee, in the court below, on an alleged contract whereby the latter employed the former to take charge of the millinery department of his store in Monmouth, in this State, for the season commencing in April and ending in July, in the year 1876, and to pay her therefor $15 per week.

The judgment was in favor of appellee, and appellant now assigns numerous errors as grounds for its reversal.

In our opinion, the case may be properly disposed of by the consideration of a single question. Appellant's right of recovery is based entirely upon an alleged special contract, and unless there was such a contract, the judgment below is right, however erroneous may have been the rulings under which it was obtained.

After some preliminary correspondence, which is not before us, appellant, who was then residing in Peoria, received from appellee the following, by mail:

"*Monmouth, Ill., March* 9, 1876.

Miss L. MACLAY, PEORIA, ILL.:—I have been trying to find your address for some time, and was informed last evening that you were in Peoria. I write to inquire if you intend to work at millinery this season, and if you have made any arrangements or not. If you have not, can you take charge of my stock this season, and if we can agree I would want you for a permanent trimmer.

Please notify me by return mail, and terms, and we can confer further.          Yours in haste,

JOHN HARVEY.

Formerly JNO. HARVEY & Co., when you trimmed for me."

Appellant's reply to this is not before us. She says she stated her terms in it, and thereafter appellee wrote her the following, which she also received by mail:

"*Monmouth, Ill., March* 21, 1876.

Miss L. MACLAY, PEORIA, ILL.:—Your favor was received in due time, and contents noted. You spoke of wages at $15 per week and fare one way. You will want to go to Chicago I presume, and trim a week or ten days.

I would like for you to trim at H. W. Wetherell's or at Keith Bros. I will give you $15 per week and pay your fare from Chicago to Monmouth, and pay you the above wages for your *actual* time here in the house at that rate per *season.*

I presume that the wholesale men will allow you for your time in the house. You will confer a favor by giving me your answer by return mail.

Yours,  JOHN HARVEY."

Appellant says she received this in the afternoon, and replied the next day by postal card, addressed to appellee, at Monmouth, as follows :

"*Peoria, March* 23.

Mr. HARVEY:—Yours was promptly received, and I will go up to Chicago next week, and when my services are required you will let me know.

Very respectfully,  L. MACLAY."

Appellant did not place this in the post-office herself, but she says she gave it to a boy who did errands about the house of her sister, with whom she was then staying, directing him to place it in the office. The postmark on the card, which is shown to be always placed on mail matter the same day it is put in the office, shows that the card was not mailed until the 25th of March.

Appellee receiving no reply from appellant, on Monday morning, March 27, went to Peoria and endeavored to engage another milliner, and failing in this, endeavored to find appellant, but was unable to do so, and then returned to Monmouth, when he received appellant's postal card, which had come to the office there during his absence. On Wednesday night, of the same week, appellee left Monmouth for Chicago, arriving

at the last named place on the following morning, Thursday, March 30.   Finding that appellant was neither at Keith Bros. nor at Wetherell's, he proceeded to employ another milliner, and on the same day, and before leaving Chicago, wrote and mailed a letter directed to appellant's address at Peoria, notifying her of that fact, but this letter, in consequence of appellant's absence from Peoria, she did not receive for some time afterwards.

The millinery season commences from the 5th to the 10th of April and ends from the 20th of June to the 4th of July, as shown by the evidence.   Appellee had not laid in his spring stock when he was corresponding with appellant, and he started to New York, from Chicago, for that purpose, on the evening of the day on which he addressed the letter to appellant notifying appellant of his employment of another milliner, the evening of the 30th of March.   Appellant says she left Peoria for Chicago on Friday, which must have been the 31st of March.   On arriving at Chicago, she went to Wetherell's, and, failing to get employment there, did not go to Keith Bros., but went to another house in the same line of business, where she remained some days, and on the 8th of April she notified appellee, by letter, that she was sufficiently informed as to the " new ideas of trimming " and was ready to enter his service.   Appellee replied to this, reciting the disappointments he claimed to have met with on her account, and again notifying her that he did not require her services.

If a contract was consummated between the parties, it was by the mailing of appellant's postal card on the 25th of March. Appellee's letter of the 21st can not be regarded as the consummation of a contract, because it restates the terms with some variation, though it may be but slight, and requires an acceptance upon the terms thus stated.   This, until unequivocally accepted, was only a mere proposition or offer. *Hough* v. *Brown*, 19 N. Y. (5 Smith) 111.

It was said by the Lord Chancellor, in *Dunlop* v. *Higgins*, 1st House of Lord's cases, at page 387 : " Where an individual

makes an offer by post, stipulating for, or by the nature of the business having the right to expect, an answer by return of post, the offer can only endure for a limited time, and the making of it is accompanied by an implied stipulation that the answer shall be sent by return of post. If that implied stipulation is not satisfied, the person making the offer is released from it. When a person seeks to acquire a right, he is bound to act with a degree of strictness, such as may not be required where he is only endeavoring to excuse himself from a liability." This is regarded as a leading case on the question of acceptance of contract by letter, and the language quoted we regard as a clear and accurate statement of the law, as applicable to the present case. It is clear here, that the nature of the business demanded a prompt answer, and the words "you will confer a favor by giving me your answer by return mail" do, in effect, "stipulate" for an answer by return mail. *Taylor* v. *Rennie et al.* 35 Barb. 272.

The evidence shows that there were two daily mails between Peoria and Monmouth—one arriving at Monmouth at 11 o'clock A. M., and the other at 6 o'clock P. M., and it did not require more than one day's time between the points. Appellee's letter to appellant making the offer, it will be remembered, bears date March 21st. Assuming the date of appellant's postal card (which, she says, was written on the morning after she received appellee's letter,) to be correct, she received appellant's letter on the evening of the 22d. Appellee was, therefore, entitled to expect a reply mailed on the 23d, which he ought to have received on that day, or, at farthest, by the morning of the 24th; but appellant's reply was not mailed until the 25th. It does not relieve appellant of fault that she gave the postal card to a boy on the 23d, to have him mail it. Her duty was not to place an answer in private hands, but in the post-office. The boy was her agent, not that of appellee, and his negligence in mailing the postal card was her negligence.

34—90 ILL

The question of whether it would not have equally well subserved appellee's object had he treated the postal card of appellant as the consummation of a contract, is irrelevant. Appellant seeks to recover upon the strict letter of a special contract, and it is, therefore, incumbent on her to prove such contract. It is required of her, as we have seen, to prove an acceptance of appellee's offer within the time to which it was limited—that is to say, by the placing in the post-office of an answer unequivocally accepting the offer in time for the return mail, which she did not do. Appellee was, thereafter, under no obligation to regard the contract as closed. He might, it is true, have done so, but he was not legally bound in that respect, nor was he legally bound to notify appellant that her acceptance had not been signified within the time to which his offer was limited. She is legally chargeable with knowledge that her acceptance was not in time, and in order to fix a liability thereby upon appellee, it was incumbent upon her, before assuming that appellee waived this objection, to ascertain that he in fact did so.

Appellee was led, by the postal card of appellant, to believe that he would, when he arrived at Chicago on Thursday, find her either at Wetherell's or Keith Bros. Had he done so, it was his intention to treat the contract as closed; but she was not there, and this intention was not acted upon, and so is to be considered as if it had never existed. Appellee, not finding appellant at Wetherell's or Keith Bros., as she had led him to believe he would, had no reason to assume that she was, in good faith, acting upon the assumption that her postal card had closed the contract, and he can not, therefore, be held estopped from denying that it was not posted in time. In view of the lateness of the season, and the danger to appellee's business from delay, of all which appellant was aware, it can not be said appellee acted with undue haste in engaging another milliner.

The judgment is affirmed.

*Judgment affirmed.*

Mr. JUSTICE DICKEY, dissenting:

I can not concur in this decision. I think the special contract was made and assented to by both parties. I concede that the *delay* of Miss Maclay in mailing her postal card was such that the mere mailing of it on Saturday, the 25th of March, did not bind Harvey or consummate a contract. I agree that on Monday evening (the 27th), when he received that card, he had, at that time, the right, by law, to reject it, because it came too late, but, in my judgment, he *waived* that right. In the language of the governing opinion, appellee was "under no obligation to regard the contract as closed. He *might*, it is true, *have done so*,"—that is, he might have "treated the postal card as the consummation of a contract."

The point on which I differ from my brethren is this: I think the evidence tends to show that he did, in fact, *waive* the delay; that he did, in fact, treat "the postal card as the consummation of a contract;" that he did "regard the contract as closed." He received on Monday evening her acceptance of his offer, with a statement, dated on the Thursday previous, that she would (in pursuance of the supposed contract) "go up to Chicago next week." If he intended to avail himself of her delay in sending her answer, and for that cause refuse to treat the contract as closed, it was his duty to notify her at once of his intention to do so. He remained silent three whole days, and permitted her to make her journey to Chicago on the faith of the supposed contract. Even had Harvey not intended to treat this as a contract consummated, his neglect to so notify her ought to estop him from saying he did not waive all objection on account of her delay in answering.

It is true, one can not, on his own mere motion, impose upon another, without his consent, the duty of rejecting an offer. In such case, the failure to reject an offer must not be held to be an acceptance. But in this case, special relations, as negotiators, had been established between these parties, at the instance of Harvey. The surroundings were such that

common honesty demanded of him that he should notify her at once if he intended to object to her acceptance of his offer on the ground that it came too late. Not only was he silent, but he did, affirmatively, treat the contract as consummated. He started to Chicago on Wednesday evening, two days after he received her postal card, as he testifies, "expecting to find Miss Maclay in Chicago," and intending to confer with her about the business which was the subject of the contract. The expectation that he would meet her in Chicago was founded on the fact that he supposed she regarded the contract complete, and that she would, in pursuance thereof, be in Chicago.

A contract consists in the meeting of two minds at the same time on the same terms, and so made manifest to each. The proof tends to show, that on Wednesday, when Harvey started to Chicago, he regarded the contract as closed, and that at that time Miss Maclay, also at Peoria, regarded the contract as made and complete; and it also plainly shows, that Miss Maclay understood that Harvey was consenting thereto, and at the same time Harvey well understood that she was consenting thereto. He thought he had hired a trimmer—she thought she had contracted for employment as such.

Had Harvey found Miss Maclay at Chicago, and had she there at once refused to perform the contract, and had she thereby compelled him, at increased expense, to hire another trimmer, Harvey could, doubtless, have had an action against her for a breach of the contract. If she were bound, he ought also to be held bound by this contract.

It is suggested, that the failure of Miss Maclay to be found in Chicago on Thursday, in some way gave Harvey the right to cease treating this contract as closed. It is true, as a matter of fact, that Harvey expected Miss Maclay would be in Chicago on Thursday, preparing to execute the contract. It was no fault of hers that she was not there on that day. She had written the week previous, saying, "I will go up to Chicago next week." She kept her promise. She arrived at Chicago on Friday, March 31. She had no intimation that

Harvey expected to meet her there, or intended to go there at all. She was under no obligation to be there before Friday, and I can not perceive how that fact can operate to release Harvey from what I regard as a binding contract.