Willis Scott *et al.*

*v.*

R. E. Fowler.

*Opinion filed April 18, 1907.*

1. Contracts—*acceptance must conform exactly to offer.* To constitute a contract by offer and acceptance the acceptance must conform exactly to the offer, and if it contains new conditions there is no contract.

2. Same—*the rule as to agreements made by correspondence.* A valid contract may be made by correspondence, but care must be taken not to construe as an agreement letters which the parties intended only as preliminary negotiations.

3. Same—*what does not constitute a contract.* A letter to the owner of a farm, enclosing a contract, upon the receipt of which, when executed in duplicate and returned, the earnest money would be paid, in which letter the date of possession desired is fixed, and a letter from the owner saying he could not sign the contract unless the other parties could make arrangements with his tenant, as

he could not otherwise deliver possession on that date, do not constitute a contract which precludes the owner from selling the farm to other persons before he has received a letter from the former parties saying they would accept the contract subject to the lease.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. E. R. E. KIMBROUGH, Judge, presiding.

This is an action in assumpsit in the circuit court of Vermilion county. The declaration originally consisted of one count, to which a demurrer was sustained by the court. By leave of court an additional count was filed, a general and special demurrer to which was sustained. Appellants having excepted to this ruling of the court, stood by the additional count and judgment was rendered against them for costs. This judgment was affirmed on appeal to the Appellate Court for the Third District, and the case was then brought to this court.

The declaration alleges that appellants resided in Vermilion county and appellee in Salt Lake City, Utah; that appellee owned two hundred and forty acres of land in Vermilion county and placed the same in the hands of one Willis McCray, of Vermilion county, as agent, for sale; that said agent found appellants as purchasers for said land and entered into a verbal agreement with them by which appellants were to pay $30,000 for the land; that $1000 was placed in the hands of one W. M. Acton to be paid to appellee as soon as a contract for the land should be executed in duplicate, and one copy thereof, properly signed by appellee, should be delivered to Acton or some bank in Danville, the balance to be paid on March 1, 1906, when the deed and possession of the land were to be given. The declaration sets out a copy of the agreement prepared, and alleges that on the day that appellants signed said agree-

ment and delivered the same to said McCray for appellee, for 'the purpose of having said contract signed by appellee, said McCray, through said Acton, wrote to the appellee as follows:

*"Mr. R. E. Fowler, Salt Lake City, Utah.*     *"March 24, 1905.*

"DEAR SIR—At the request of Mr. Will McCray I enclose herewith contract, executed in duplicate, between yourself and Thomas F. Collison and Willis Scott for the sale of your farm to them at $125 per acre, $1000 cash and the balance the first of March, 1906, when possession is to be delivered. The $1000 has been left in my hands, and after you sign the contracts return two of them to me or send them to any bank in this city, as you may prefer, and I am authorized to pay the $1000 upon receipt of contracts. Please do so at once.     "Yours truly,

W. M. ACTON."

The declaration further alleges that the above letter was received by appellee and that in reply he sent the following answer to Acton:

"SALT LAKE CITY, *3/29, 1905.*

*"William M. Acton, Esq., Danville, Ill.*

"DEAR SIR—I received your letter and contract yesterday, contents duly noted, in regard to signing those contracts, in which it is stated that I shall give possession 1st of Mch. 1906. This I cannot (under the contract I have signed with Mr. Purnell) do. I think you are the attorney that drew up the contract for Mr. Purnell, and you know that without Mr. Purnell was perfectly willing I could not agree to give possession on that date without causing trouble. Now, if they want to take the farm subject to the lease then I can talk trade with them, otherwise I cannot. I think Mr. Purnell for a small consideration would give them possession. They are getting the farm $25 per acre too cheap, nevertheless I will let them have it if they make terms with Purnell. I will not sign contracts under present circumstances. Awaiting your reply, I remain, as ever,     "Yours truly,

R. E. FOWLER."

The declaration also alleges that the last mentioned letter was received by Acton April 1, 1905, and thereupon he (Acton) notified appellants of its receipt and contents, and they immediately authorized and directed Acton, for and in their behalf, to write appellee the following letter:

"*Mr. R. E. Fowler, Salt Lake City, Utah.*     "*April 1, 1905.*

"DEAR SIR—Your letter dated March 29th just received. Messrs. Scott and Collison are in my office and I have read your letter to them, in which you state that you will accept their proposition as set forth in the written contracts if they will take it subject to the Purnell lease. While they are very anxious to have possession the first of next March, they are willing to take their chances in making satisfactory arrangements with Mr. Purnell, and authorize and direct me to inform you that they hereby accept your proposition.

"You can use the same contracts that I mailed you by writing in, after the words wherein it is stated that they shall have possession March 1st, 1906, the following words, to-wit: 'Subject to the lease of Samuel Purnell, the party of the second part to have the rent for the year 1906.'

"As soon as the contracts are returned either to me or to the Palmer National Bank the $1000 will be paid, as stated in my previous letter.     "Yours truly,

W. M. ACTON."

The declaration also sets out the lease or "contract" from appellee to Purnell, referred to in the foregoing letters, for the term of two years beginning March 1, 1905, at a rental of $1000 a year. It further alleges that after the last mentioned letter had been duly deposited in the post-office at Danville, Illinois, April 1, 1905, appellee conveyed the lands in question to one Taylor for the consideration of $31,200, subject to Purnell's lease. The declaration further alleges that appellee replied to Acton's letter of April 1, 1905, stating, in substance, that he had received said letter, and also that the land in question had been sold to said Taylor subject to the Purnell lease, assigning as his only reason for making the sale to Taylor and not to appellants the fact that he had sold to Taylor before receiving the letter of April 1 from Acton, and that he would much rather appellants had gotten the farm as they were both old acquaintances, but that they were too slow in making up their minds. It is further alleged that appellee had thereby placed himself in a condition so that he could not carry out his contract, and that appellants had always been ready and

willing and able to carry out the same; that the fair market value of said farm was $36,000, and that by the appellee's failure to carry out said contract appellants had been damaged $6000.

O. M. JONES, and W. M. ACTON, for appellants.

REARICK & MEEKS, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The chief contention of appellants is, that the correspondence set out in the declaration constituted a complete contract between the parties for the sale of the lands at a consideration of $30,000, subject to the Purnell lease. An acceptance must conform exactly to the offer, and if it contains new conditions there is no contract. (*Maclay* v. *Harvey*, 90 Ill. 525; *Gradle* v. *Warner*, 140 id. 123.) Fowler, in his first letter to Acton, refused to sign the contract as it then stood. Is it a fair construction of that letter, taken in connection with the other letters and the facts as set forth in the declaration, that he intended the agreement to be complete before the formal contract in writing was signed, provided they took the land subject to the Purnell lease? Bishop on Contracts (sec. 319) states: "If parties agree on terms, however precise, 'subject to the preparation and approval of a formal contract,' the concurrence of their wills is supended, and where nothing further is done there is no contract. Yet the mere fact that the reduction of an informal agreement, oral or written, to a formal written one was contemplated or stipulated for does not prevent the former from taking immediate effect. The question whether it does or not depends upon what the parties intended." This statement of the law is in full harmony with what this court held in *Baltimore and Ohio Southwestern Railroad Co.* v. *People*, 195 Ill. 423. A valid contract undoubtedly can be made by correspondence, but as was said in *Lyman*

v. *Robinson,* 14 Allen, (Mass.) 242, care should be taken not to construe as an agreement letters which the parties intended only as preliminary negotiations.

We think it is plain from the correspondence set out in the declaration that it was not the intention of either appellants or appellee to have the contract consummated by the letters alone, but that it was the intention that it should not be complete until the written contract had been formally executed by appellee and one copy returned to and received by appellants and the $1000 left on deposit with Acton had been turned over to appellee or his representative. The transaction was not a contract so long as anything remained to be done by one of the parties thereto. "The rule is necessarily universal that both must be bound or neither will be." (Bishop on Contracts, sec. 318.) The contract was only to be considered complete when the formal prepared agreement was signed by both parties. It is evident that the appellants did not consider themselves bound until they should receive their copy, properly signed, nor was the earnest money to be paid over to appellee until that time. This was a "condition precedent to its completion." We have examined the authorities referred to in appellants' briefs on this question, including 7 Am. & Eng. Ency. of Law, (2d ed.) p. 140, and its citations, and find nothing in conflict with the conclusion here reached.

Appellee's last letter, referred to in the declaration, in which he stated that he could not sign the contract because he had already sold the land to Taylor, could not properly be set out in the declaration on any theory advanced by appellants. That letter was a matter of evidence, and not of pleading. Had it been introduced in evidence it would not in any way change the conclusion we have reached as to the intention of appellee.

The judgment of the Appellate Court was correct, and it will accordingly be affirmed.          *Judgment affirmed.*