## Liberty State Bank, Appellee, v. Louis G. Deschler Company, Appellant.

1. FORCIBLE ENTRY AND DETAINER—*sufficiency of identification of property*. In an action of forcible entry and detainer brought by the lessee of premises against a lessee in possession who refused to surrender the premises at the end of his term, a stipulation entered into at the trial that a certain estate is the owner of the premises and that both parties are claiming under the executors of the estate and that defendant was and is in possession, covers the point that the proof does not show that the property described in the judgment is identical with that described in the lease and appellant cannot, on appeal, complain of lack of proof on that point.

2. CONTRACTS—*sufficiency of acceptance*. A contract may be made by the acceptance by one party of a proposition theretofore made by another, but in such event the minds of the parties must meet and the acceptance must conform exactly to the offer.

3. LANDLORD AND TENANT—*insufficiency of acceptance of offer to lease*. A proposal to lease premises on the terms of payment of a certain rental and the assumption of all improvements and payment of the taxes above the present figure is not accepted by a statement that the party will take the premises for the term and cash rental proposed but which omits the terms as to improvements and taxes.

Appeal from the Circuit Court of McLean county; the Hon. ED-WARD BARRY, Judge, presiding. Heard in this court at the April term, 1921. Affirmed. Opinion filed April 22, 1922.

A. E. and R. C. DE MANGE, for appellant.

COSTIGAN & WOLLRAB and WILLIAM R. BACH, for appellee.

MR. JUSTICE HEARD delivered the opinion of the court.

This is an appeal from a judgment in forcible entry and detainer in favor of appellee against appellant.

Louis G. Deschler Company, appellant, since February 2, 1916, has conducted a cigar and tobacco business in the building No. 119 N. Main street, Blooming-

ton, Illinois, paying a rental of $125 per month, lessee to make repairs; its original lease expired July 1, 1920. In May, 1919, it began to negotiate for a renewal of the lease. The building belonged to the estate of M. Marblestone, a deceased resident of Cincinnati, Ohio. Daniel and Cora M. Segal were executors of Marblestone's last will and testament and trustees in control of the property, and Wolf Griesheim was the Bloomington agent for the property.

September 19, 1919, Daniel Segal and Cora M. Segal, as executors and trustees, leased, in writing, the premises in question to appellee for a term of ten years from July 1, 1920. Appellant refusing to deliver possession of the premises to appellee, upon the termination of the lease, July 1, 1920, after written demand, this suit was brought.

Appellant claims that the proof does not show that the property described in the judgment is identical with that described in the lease. This identical question was not raised on the trial, but, on the contrary, the parties entered into a stipulation "that the Manuel Marblestone Estate is the owner of the premises and that both plaintiff and defendant are claiming under D. S. and Cora M. Segal, Executors of said Estate, and that defendant was in possession and still is."

This stipulation covers the point raised and appellant cannot now be heard to complain of a lack of proof in that respect.

Appellant claims the right to withhold the possession of the premises by reason of an alleged contract of leasing with Wolf Griesheim for a period of ten days from July 1, 1920, made in August, 1919. Appellee contends that this alleged contract was not made, and that, if made, there was no evidence in the record of any writing, signed by the Segals, the parties to be charged, or by anyone by them authorized in writing, and that it was therefore void by reason of the statute of frauds.

The greater part of appellant's argument is to the effect that, while there is no direct written evidence in the record showing the scope and extent of Griesheim's authority in the premises, the only logical conclusion to be drawn from all the evidence in the case is that Griesheim must have had written authority from the Segals, authorizing him to lease the premises to appellant for ten years from July 1, 1920, or a written proposition from the Segals for the extension of appellant's lease for the ten-year period.

There is no question but what Griesheim was the local agent of the Segals for some purpose, nor can there be any question but what his authority, whatever that authority was, was in writing. Neither is there any question but what on May 6, 1919, Daniel Segal wrote Griesheim as follows:

"The Marblestone Estate is supposed to be wound up February 1, 1921, and we would not care to renew the Deschler lease beyond that time, as we are undecided whether the estate will be continued after that time. We believe, however, that the estate will be continued as heretofore. We will renew the Deschler lease up to February 1, 1921, at a rental of $175 per month, and should the estate be continued under the present conditions, we will give Mr. Deschler the first chance to make the renewal of his lease from February 1, 1921, thereafter for a period of years to be decided."

It developed that the Marblestone estate was not to be wound up, and Griesheim entered into negotiations with appellant for a renewal of its lease for a ten-year period.

In the view which we take of this case, the nature and extent of Griesheim's authority is not material. L. G. Deschler, president of appellant, testified:

"I had conversation with Wolf Griesheim. Griesheim said there was a bank wanted to lease the building and I had better hurry up. That was in May and June. He said the bank offered $2,500 and agreed to keep up repairs and if there was any additional tax above what they were then paying that the bank would

assume that and if I wanted to do the same I could have the lease. That was in June, 1910. The lease under which I was then holding expired July 1, 1920. Later I had a talk with Julius Griesheim about August 1, 1919. Julius said his father was sick in Chicago and said to me if you want this building for ten years under the same conditions the bank agreed to take it, $2,500 a year for ten years, and assume all improvements and pay the taxes above anything they are now, you better get busy. This bank is hot after it. I told him I would call a directors' meeting and ascertain whether they favored taking a ten year lease under those conditions. He answered, all right. The next morning we had a directors' meeting and decided to take it and I wired Julius Griesheim, that I would accept the building for ten years at $2,500.''

The telegram sent by appellant was as follows:

"Indianapolis, August 2nd, 1919. "10:30 a. m. Julius Griesheim, Bloomington, Illinois; will take room for 10 years at $2500. Notify Mr. Segal at once.''

To constitute a contract it is not necessary that the parties should actually meet, but a contract may be made by the acceptance, by one party, of a proposition theretofore made by another, but, in such event, the minds of the parties must meet, and in order to have the acceptance of an offer binding, such acceptance must conform exactly to this offer. *Davis v. Fidelity Fire Ins. Co.*, 208 Ill. 375; *Scott v. Fowler*, 227 Ill. 104; *El Reno Wholesale Grocery Co. v. Stocking*, 293 Ill. 494. In the present case, the terms of the offer, if made, were that appellant "should pay $2,500 a year and assume all improvements and pay the taxes above anything they are now,'' while the acceptance omitted the terms as to improvements and taxes. The telegram of acceptance was not as broad as the offer. The offer and the acceptance did not exactly conform, the minds of the parties did not meet and there was therefore no contract.

The judgment is affirmed.

*Affirmed.*