**Standard Growers Exchange, Inc., Plaintiff in Error, v. Leo Bredehoft et al., Defendants in Error.**

SALES—*buyer's silence not equivalent to acceptance of unauthorized substitution.* No obligation by defendant's to pay for peaches shipped to them by plaintiff is shown by evidence that after an interchange of telegrams quoting prices and terms on peaches in crates and bushel baskets, defendants ordered a carload of "good peaches" in crates, that plaintiff, unable to supply crates, shipped a car of the "best available peaches" in baskets and so informed defendants who made no reply until the peaches, not of good quality, arrived in bad condition, that they then wired a refusal to receive the shipment except on plaintiff's account, defendants' silence not being equivalent, under the circumstances, to acceptance of the inferior peaches in baskets in substitution for good peaches in crates.

Error by plaintiff to the Circuit Court of Vermilion county; the Hon. JOHN H. MARSHALL, Judge, presiding. Heard in this court at the April term, 1922. Affirmed. Opinion filed October 25, 1922.

REARICK & MEEKS, for plaintiff in error.

LINDLEY, PENWELL & LINDLEY, for defendants in error; WALTER C. LINDLEY, of counsel.

MR. PRESIDING JUSTICE NIEHAUS delivered the opinion of the court.

The plaintiff in error, Standard Growers Exchange, an incorporated company engaged in the wholesale fruit business at Atlanta, Georgia, commenced this suit in assumpsit in the circuit court of Vermilion county against the defendants in error, Leo Bredehoft and Albert Ball, doing business as commission merchants under the firm name of Bredehoft & Ball, at Danville, Illinois. A recovery is sought for damages resulting to the plaintiff, because of the refusal of the defendants to accept a carload of Hiley's peaches, which the plaintiff shipped to Danville for the defendants from Atlanta, under an alleged contract. It is contended by the plaintiff that the contract for the purchase of the peaches is contained in the telegraphic communications which passed between the parties.

On July 3, 1920, the defendants inquired of plaintiff:

"Advise what you have rolling in peaches."

On the same day plaintiff replied:

"Nothing available rolling, offer Hiley's Monday's shipment, 3.75 f. o. b. according quality. Our terms quick."

On July 5, 1920, defendants wired plaintiff:

"Wire price Hiley's bushels also crates."

On the next day plaintiff replied:

"Prompt shipment Hiley's bushels 3.00, crates 2.75. Our terms quick."

On July 7, 1920, defendants wired to plaintiff:

"Wire received. Ship good car Hiley's, crates, confirm."

On the same day, plaintiff replied:

"Confirm best available Hiley's. Number later."

And later on the same day, plaintiff again wired to defendants:

"Giving you car 387 bushels white selling quarter higher. Billing 2.70 f. o. b. Growers 25414."

There was a trial by jury, and at the close of the evidence for the plaintiff the court directed a verdict for the defendants; upon this verdict a judgment was rendered in bar of plaintiff's suit. This writ of error is prosecuted to reverse the judgment.

It is contended by the plaintiff in error that the court erred in directing the verdict for the defendants. The carload of peaches in question was shipped by the plaintiff to the defendants on July 7, 1920, in consequence of the interchange of telegrams hereinbefore set out, and arrived at Danville July 12 following. The defendants refused to accept the peaches and thereupon the following telegrams concerning the matter were exchanged.

On July 12, 1920, defendants wired plaintiff:

"Car peaches arrived showing bad decay. Will handle your account only. Act quick. Must be moved."

To which plaintiff replied:

"File your claim by letter mailing all papers this office. This according terms of sale. Draft payable on presentation, otherwise no recourse."

To which defendants replied:

"Will handle peaches your account only. Heavy percent brown rot. Would prefer you divert."

To which plaintiff replied:

"Will not deviate from our terms. Draft must be paid immediately on presentation according our terms. We willing leave matter Produce Reporter for final adjustment. We will put up in escrow amount invoice. Our opinion this absolutely fair."

To which defendants replied:

"Will not take up draft. Will handle your account. Give you quick sales. Better act quick."

To which plaintiff replied on July 13, 1920:

"Our wire yesterday absolutely fair. Refer you our wires third and sixth specifically read our terms car on track your order. This final. Mailing tomorrow all papers Produce Reporter."

To which defendants replied:

"Refuse car. Advise disposition."

To which plaintiff replied:

"Not up to us to give disposition. Car on track subject your order. This absolutely final."

To which defendants replied:

"Had car inspected. Shows brown rot. All number twos. We bought good car. Also bought crates. You shipped bushels. We refuse. Better divert."

On July 14, 1920, the plaintiff sent this telegram to defendants:

"Answering if car bushels was not satisfactory should have advised when we wired you car number contents. We are mailing complete file Produce Reporter final adjustment. Car on track your order. Under our terms you cannot refuse to accept delivery. Pay draft."

It is apparent from the language of the telegrams that, as a matter of fact, no agreement was reached concerning the purchase of the peaches by the parties before the peaches arrived at Danville. The defendants' order to the plaintiff for peaches on July 7 was to ship good car of Hiley's in crates, peaches in crates being desired by the defendants for the demand of the retail trade at that time. In response to the order the plaintiff shipped a car containing 387 bushels of peaches in baskets, and being the best Hiley's available. The evidence tends to show that "the best Hiley's available" were not of good quality, and some of the peaches were afflicted with brown rot. There is no evidence to show that the defendants signified in any way that they would accept 387 bushels of the best available Hiley's in bushel baskets as a substitute for the carload of good Hiley's packed in crates, which they ordered. The first expression by the defendants concerning the matter was a declination to accept the peaches referred to and that they would receive and handle them only on plaintiff's account, if the plaintiff wanted them to do so, and this was immediately after the peaches arrived in Danville. It is contended by the plaintiff that the defendants should have wired that they would not accept the peaches shipped, and that their silence was, in effect, an acquiescence in the change of their order. As a matter of legal obligation, however, the defendants

were not required to give such notice to the plaintiff, but it was incumbent on the plaintiff to obtain from the defendants a confirmation of the change which they made in defendants' order for the peaches. *Maclay v. Harvey*, 90 Ill. 525; *Gradle v. Warner*, 140 Ill. 123; *Davis v. Fidelity Fire Ins. Co.*, 208 Ill. 383; *Brinker v. Scheunemann*, 43 Ill. App. 663; *Middaugh v. Stough*, 161 Ill. 316; *Scott v. Fowler*, 227 Ill. 108; *Rugg v. Davis*, 15 Ill. App. 647. Under the circumstances presented the defendants' silence concerning an acceptance of the shipment in question cannot legally be regarded as an acceptance. The law on this point is tersely stated in Page on Contracts, p. 222, ¶ 43:

"Failure or omission to reject an offer is not equivalent to an acceptance. * * * Even if the party making the offer prescribes that failure to answer shall be regarded as an acceptance, such failure does not amount to an acceptance."

"A party cannot, by the wording of his offer, turn the absence of communication of acceptance into acceptance, and compel the recipient of his offer to refuse it at the peril of being held to have accepted it." Clark on Contracts, pp. 31, 32. "A person is under no obligation to do or say anything concerning a proposition which he does not choose to accept. * * * There must be actual acceptance or there is no contract." *More v. New York Bowery Fire Ins. Co.*, 130 N. Y. 537. To constitute acceptance there must be words written or spoken or some overt act. Bishop on Contracts, ¶ 183; *Prescott v. Jones*, 69 N. H. 305. For the reasons stated it appears to be clear that the plaintiff's evidence did not show a contract by the defendants to purchase the peaches in question, and hence the plaintiff had no cause of action. We are of opinion that the court properly directed a verdict for the defendants. The judgment is affirmed.

*Affirmed.*