### EVANS v. MARR.

(Circuit Court of Appeals, Fifth Circuit. March 11, 1924. Rehearing Denied April 1. 1924.)

No. 4108.

Brokers ⬦⟲58—Broker not entitled to commission on sale, where parties intended contract to be in writing and it was never signed.

Under agreement by defendant to pay plaintiff commission on sale of property. if plaintiff produced buyer with whom sale was consummated, plaintiff *held* not entitled to the commission where defendant and buyer so produced discussed the terms of a contract, which as agreed on were dictated to a stenographer until all terms were agreed on and the parties left with the intention of signing the contract as dictated, when transcribed, but it was never signed.

In Error to the District Court of the United States for the Western District of Louisiana; George W. Jack, Judge.

Action at law by J. P. Evans against Pat Marr, individually and as trustee. Judgment for defendant, and plaintiff brings error. Affirmed.

Certiorari denied 44 Sup. Ct. 460, 68 L. Ed. ——.

J. D. Wilkinson and C. Huffman Lewis, both of Shreveport, La., for plaintiff in error.

Hampden Story, of Shreveport, La., for defendant in error.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

---

⬦⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WALKER, Circuit Judge.   Evans sues Marr to recover $50,000 as commissions claimed to have been earned in accordance with a contract between the parties.   A jury was waived in writing, and the trial was before the District Judge, who made the following findings of fact:

"The testimony, I think, establishes that Marr did express a willingness to sell the leases in question for $1,500,000, the conditions and details of the trade to be later agreed on between him and the purchaser, and that he did agree to pay Evans a commission of $50,000 if he put the defendant in touch with a buyer, and they together worked out the details of the deal and 'consummated the trade.'   I think the evidence furthermore establishes the fact that Evans brought Marr and Shaw, the representative of the Magnolia Petroleum Company, together, and that, at the office of Patterson & Rector the proposed deal was fully threshed out, and all terms and conditions agreed on, clause by clause, and the contract dictated to the stenographer;   that it was then read by her from her notes, and the whole agreed to, but not transcribed, because of the lateness of the hour;   that, when the parties left the office, they considered the contract closed, and each fully intended signing it as dictated, when it should have been transcribed the following Monday morning.   The stenographic notes were not transcribed at once, because, when an agreement on all points had been finally reached and dictated, it was nearly 12 o'clock Saturday night, and the contract could not be typewritten before Sunday morning, and under the laws of Arkansas a contract signed on Sunday is not valid.

"Marr gave Courtney, of the Magnolia Company, a note to his superintendent, Little, which was filed in evidence and reads as follows:   'Chas. Little, Homer Moore, Geo. White:   This is Mr. Courtney, of the Magnolia. Allow him or his man full access to the property and all our dope.'   The following Monday, the evidence shows, Marr refused to execute the contract unless it were changed so as to make the notes bear interest at a stipulated rate, and so as to provide for the fifty-fifty working agreement on the McDonald lease.   Shaw replied that he had no authority to make such changes, but would submit the proposition back to his company and advise later. Before he could do so, however, Marr made sale of the properties at the same price to the Texas Company;   the contract embracing the stipulation for the development for the joint benefit of the two of the McDonald lease.

"In the case at bar, Evans was not present at Patterson & Rector's office when the contract was dictated, nor is it contended that Marr notified him that an agreement had been reached. If, then, the agreement was in fact tentative Marr had the right to withdraw before it became final.   Was it such a tentative understanding?   There was no separate complete verbal contract entered into by parties with a subsequent intention thereafter to reduce it to writing;   but on the contrary, the intention of the parties was, at one and the same time, to reach an agreement on all details and then and there place such an agreement in writing.   The contract was in fact threshed out, discussed, and dictated, clause by clause, with intention of signing it just as soon as it could be transcribed.   Under such circumstances, it cannot be said that it was the intention of the parties that either should be bound until their signatures were affixed.   Until that instant, the agreement was necessarily inchoate."

The court's finding as to the terms of the agreement upon which the claim of Evans is based was in accordance with the testimony of Evans.   In testifying as to that agreement Evans stated:

"This acreage totaled approximately 712 acres. He said that he would sell this property for $1,500,000, $1,000,000 in cash and $500,000, either out of the oil or notes, preferably out of notes; and he said—I asked him what he would pay me if I sold the property for him, and he said that he would give me $50,000 in the event my people traded with him, and that all I would have to do was to get them together and they would work out the details of the

trade; that if I put him in touch with the buyer, and they consummated the trade, he would give me $50,000."

Under the agreement sued on the right of Evans to the commission was dependent upon the consummation of a sale by Marr to the prospective buyer procured by Evans. If Marr did not make such sale, or obligate himself to do so, the condition precedent to the existence of the right of Evans to any commission was not performed or complied with; an actual agreement between Marr and such prospective buyer, not merely a prospective or contemplated one, being required to entitle Evans to the commission. Pfanz v. Humburg, 82 Ohio St. 1, 91 N. E. 863, 29 L. R. A. (N. S.) 533, and note; American Mercantile Corporation v. Spielberg (C. C. A.) 262 Fed. 492. It is disclosed that in concluding that the evidence as to what occurred between Marr and such prospective buyer did not show a contract or agreement between them the court relied on the decision in the case of Avendano v. Arthur & Co., 30 La. Ann. 316, to the effect that, where parties understand, contemplate, and intend, originally, that their contract is to be reduced to writing, neither is bound until the contract is signed by both.

The authorities generally are to the effect that, if the parties contemplate a reduction to writing of their agreement before it can be considered complete, there is no contract until the writing is signed. Under those authorities the finding as to what occurred between Marr and Shaw showed merely negotiations for a contract, which was not intended to come into existence until it should be reduced to writing and signed. Northwestern Lumber Co. v. Gray's Harbor Co., 221 Fed. 807, 137 C. C. A. 365; McDonnell v. Cœur d'Alene Lumber Co., 56 Wash. 495, 106 Pac. 135; Alexandria Billiard Co. v. Miloslowsky, 167 Iowa, 395, 149 N. W. 504; Scott v. Fowler, 227 Ill. 104, 81 N. E. 34; Strong & Trowbridge Co. v. Baars & Co., 60 Fla. 253, 54 South. 92; Williston on Contracts, § 28. The finding to the effect that what occurred between Marr and Shaw did not get beyond negotiations, that no agreement or sale was completed or consummated between them, requires the conclusion that Evans was not entitled to the commission claimed, as that which was a condition precedent to the accrual of his right to the commission did not occur.

The case would have been materially different if there had been findings, supported by evidence, that Marr and Shaw orally made a completed sale contract, that they further agreed that that contract was to be reduced to writing, and that Shaw or his principal wrongfully failed or refused to sign the writing evidencing the contract already made. The question whether Evans would or would not have been entitled to the commission, if such findings had properly been made, is not presented by the record.

No error is shown by the record. The judgment is affirmed.