Charles H. Stern and Maurice S. Stern, Executors of the Estate of Esther Stern, Deceased, Appellants, v. Independence State Bank and State Savings Bank and Trust Company, Appellees.

Gen. No. 35,928.

Opinion filed March 29, 1933.

LEE D. MATHIAS, for appellants; CLYDE L. TODD, of counsel.

EPSTEIN & ARVEY, for appellees; LOUIS M. MANTYN-BAND and ELMER GERTZ, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

This was an action in assumpsit wherein the plaintiffs sought to recover the sum of $500 and interest which they had on deposit in the Independence State Bank at the time the bank closed. The State Savings Bank and Trust Company, the successor of the Independence State Bank, was made a party defendant, because of its contract with the Independence State

Bank, whereby it agreed to assume and pay the obligations of the Independence State Bank. The cause was tried before the court without a jury, and upon the conclusion of the hearing, the court found the issues for the defendants and entered judgment upon this finding. The plaintiffs appeal.

In March, 1930, the Independence State Bank suspended business and at that time the plaintiffs had on deposit in the bank $1,985. On March 24, 1930, the Independence State Bank entered into an agreement with the State Savings Bank and Trust Company. By the terms of this agreement the Independence State Bank sold, transferred and assigned to the State Savings Bank and Trust Company all of its assets, and this bank assumed the liabilities of the Independence State Bank.

A letter dated March 3, 1930, was mailed to the plaintiffs, signed by S. C. Levin on behalf of the depositors' committee, which letter related to a proposed organization of a new bank to take over assets of the Independence State Bank. In order to raise the required sum of money, it was suggested in the letter that each depositor assign 25 per cent. of his deposit for the purchase of collateral trust gold notes signed by Louis Bomash in the aggregate amount of $650,000, secured by a trust deed upon 10 parcels of real estate owned by Bomash. Inclosed with this letter of March 3, 1930, was a proposal, which was to be signed by the plaintiffs, as follows:

"Independence State Bank,

"Chicago, Illinois.

"Dear Sirs:

"Under date of February 28, 1930, Louis Bomash delivered a letter addressed to the Members of the Depositors' Committee Representing the Depositors in the Independence State Bank, outlining a plan to protect the depositors of your bank and to assist in the reorganization of a new bank.

"Among other things, this plan provides for the creation by you of a trust; the transfer assignment and conveyance to the Trustee named in said trust of certain real estate securities and/or collateral and the execution and delivery to you by said Trustee of trust certificates or other obligations of the Trustee in the aggregate principal amount of $650,000.00.

"As a depositor in your bank it is to my interest to assist in carrying out the plan outlined in the letter of Mr. Bomash and I therefore agree, upon the execution and delivery to you by said Trustee of trust certificates or other obligations of the Trustee in the aggregate amount of $650,000.00 as provided in said letter of Mr. Bomash to purchase $——————— face value of said trust certificates or other obligations of said Trustee and to pay for the same the face value thereof and accrued interest to date of delivery to me as follows:

"When you have received cash and/or subscriptions in an amount equal to the face value of said $650.000.00 of trust certificates or other obligations of said Trustee plus accrued interest to date of delivery to subscribers you are authorized to charge my deposit balance with the full amount of the purchase price of the trust certificates or other obligations of said Trustee which I hereby have agreed to purchase and thereafter you shall hold said trust certificates or other obligations of said Trustee for delivery to me or upon my order.

"In the event that you are unable to sell for cash and/or depositors' subscriptions all of said trust certificates or other obligations of said Trustee (in the aggregate principal amount of $650,000.00) within sixty days after receipt thereof by you, all right and obligation on my part to purchase any of said trust certificates or other obligations of said Trustee as herein provided shall cease and determine.

"No subscription from any depositor shall be valid if made for more than the amount on deposit with you of such subscriber unless accompanied by an agreement to pay cash for any such excess.

"Name:

"Address: 3/8/30."

There is evidence of a telephone conversation between Charles H. Stern, one of the plaintiffs, and S. C. Levin of the depositors' committee, to the effect that the plaintiffs would agree to sign the document mailed to them, upon the condition that the agreement would provide that the certificates would mature within 12 to 18 months after the date of the certificates; that Charles H. Stern, as one of the executors of the estate of Esther Stern, deceased, signed the form received by the plaintiffs and hereinbefore set forth, to which agreement was attached the following letter of the plaintiffs:

"March 8th, 1930.

"We are in receipt of your letter 3rd Inst., same having Government Post Mark, on March 7th, 1930, attached to your letter a typewritten form, specifying $500.00, to be purchased Trust Certificates. We return this typewritten letter same signed by us, authorizing you to make purchase of these said Certificates, in the name of Maurice S. & Charles H. Stern, Exec't. with the understanding that these Notes, are to mature in one year to 18 months, not later, bearing 6% interest, and that the remaining balance to be given to us immediately after the opening of the bank.

"We have been informed by your Mr. S. C. Levin, on the phone yesterday, that there is a balance due Esther Stern Estate. Executors, Maurice S. & Charles H. Stern, the amount of $1,985.00, and that the 25% for the Trust Certificates, charged against us $500.00, to be deducted from this amount, leaving a net balance due us $1,485.00.

"If the above meets with your approval, and you agree to remit us the balance as above stated, you may then proceed with the $500.00 Trust Certificates, also acknowledge confirmation as to the herein.

"Yours very truly,
"Esther Stern Estate.
"By: Charles H. Stern,
*Executor.*"

It also appears from the evidence that after the mailing of the letter by the plaintiffs inclosing the proposal signed by them, they were notified to call for the trust certificates provided for in the agreement; that the plaintiff Charles H. Stern was tendered certificates made payable in 36 months, which were refused by him; that no other certificates were offered to the plaintiffs, and that on March 3, 1930, the plaintiffs withdrew from the Independence State Bank $1,485, leaving a balance on deposit of $500.

The defendants urge that by a preponderance of the evidence they have established that a novation was agreed to between the parties and that by the plaintiffs' purchase of the collateral trust certificates they released the Independence State Bank, and its assigns, from all liability. It is clear from the record that no time was fixed for the maturity of the certificates, and in order to be assured of the time of maturity the plaintiffs mailed the letter attached to the proposal, stating that the certificates would be accepted if the maturity date was within 12 to 18 months from the date of the certificates. This was a qualified acceptance by the plaintiffs. The modification of the contract was not acceptable to the defendants and there was no purchase by the plaintiffs of the certificates offered by the defendants.

In the case of *Worley v. Holding Corp.*, 348 Ill. 420, the court, in passing upon the question of when the acceptance of a contract is established and applying the rule to that case, said:

"An acceptance must be unequivocal in order to create a contract. (Section 58, Re-statement of the Law of Contracts, the American Law Institute.) A reply to an offer, though purporting to accept it, which adds qualifications or requires performance of conditions, is not an acceptance but is a counter-offer. (Section 60 of the same Re-statement.) To constitute a contract by offer and acceptance the acceptance must conform exactly to the offer, and if it contains new conditions there is no contract. (*Scott v. Fowler,* 227 Ill. 104; *Brach v. Matteson,* 298 id. 387.) A letter written in reply to an offer, which re-states the terms of the offer, but with some variations, though slight, cannot be regarded as the consummation of a contract, and requires an acceptance upon the terms thus stated, and until unequivocally accepted, is only a mere proposition or offer. *Maclay v. Harvey,* 90 Ill. 525."

The defendants contend that when the Independence State Bank closed its doors it alone was indebted to the plaintiffs, and that the State Savings and Trust Company did not assume the liability of the Independence State Bank to pay the plaintiffs the sum of $500 as alleged in the plaintiffs' statement of claim. Having concluded that there was no novation established by the acts of the parties in the instant case, the liability of the Independence State Bank to the plaintiffs was a deposit liability. In the agreement between the two banks, the State Savings and Trust Company, designated as the new bank, expressly assumed and agreed to pay the liabilities of the Independence State Bank, referred to in the agreement as the Old Bank, to its "commercial and/or savings depositors." By the assumption of the liabilities of the Old Bank, the New Bank received all of the assets of the Old Bank, and upon receipt of such assets by transfer, the New Bank obtained sole title to the property. The New Bank having assumed the obligation to pay the depositors, the plaintiffs had a right to

enforce the fulfillment of this obligation, which was made for the benefit of depositors, and the right of action accrued when the plan in question was not acceptable to the parties.

For the reasons indicated, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

WILSON, P. J., and HALL, J., concur.