SAMUEL DAVIDSON

*v.*

WILLIAM PORTER *et al.*

1. AGENCY—*purchaser.* A person purchasing of an agent is bound, at his peril, to see that the agent has authority to make the sale

2. CONTRACT—*what necessary to constitute.* The minds of the parties must come together on the terms and conditions of an agreement before there can be a contract.

3. POSSESSION—*of notice to subsequent purchaser.* A party in possession of lands claiming to have a contract with the owner for the purchase of the same filed a bill to compel a conveyance to him, a subsequent purchaser being made a party defendant: *Held,* the possession of complainant could

only charge the subsequent purchaser with notice of the facts as they existed; and there being no actual purchase by the complainant, his possession being unauthorized, the relief sought was denied.

APPEAL from the Superior Court of Chicago.

Messrs. HELM & HAWES, for the appellant.

Mr. J. W. WAUGHOP, for the appellee, Porter; and Mr. B. C. COOK, for the Railroad Company.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This controversy grows out of a claim on the part, both of appellee and appellant, that they had each purchased the land in dispute from different agents of the Illinois Central railroad company. Appellee filed his bill against the railroad company and appellant, to compel a conveyance to him. He alleges that he had purchased the land of an agent, had gone into possession, by fencing, breaking and cultivating the land, and paying for it before appellant purchased; that appellant had notice, actual and constructive. On the other hand, appellant denies that appellee had purchased, or that he had any notice that appellee claimed any right to the land, and insists he purchased of Sill, made the first payment, and received an obligation for a conveyance. The railroad company deny that Shellswick, of whom appellee claims to have purchased, had any authority to make a contract for the sale of the land; and claim that appellant's money was received, and a contract for a conveyance executed to him, before the officers empowered to sell had any notice of appellee's intention or effort to purchase.

Appellee introduced receipts for money paid to Shellswick, as the agent of the company, and testified in his own behalf, that he paid to Shellswick $100 in October, 1866, and took a receipt therefor; and paid another $100 in January, 1867, when he surrendered the first receipt and received one for

$200; that another $100 was paid in the March following; that $60 more was afterwards paid, and completed the full payment for the land ; that he took possession of it at the time he contracted to purchase, and the land had been fenced and cultivated since the spring of 1867. It appears that in the summer of 1867, it was cultivated in corn.

Davidson introduced on the trial the contract for the purchase of the land, dated the 16th day of August, 1867, and swore in his own behalf, that he made the contract with Sill on the 10th of that month ; that he had paid on the land $336 ; on the 12th of August $118 to the company's agent at Clifton, $112 to the cashier of the company the 15th of August, and to him $106 on the 18th of the same month; that at his request Sill telegraphed to the officer having charge of the land department of the company to ascertain whether this land was for sale, before he purchased ; that he knew nothing from appellee of his claim to the land until in October, 1868, but Shellswick wrote him a year previous to learn whether he would sell his claim to appellee, who, he said, had failed to get the land by reason of Shellswick's sickness; that he resided in Michigan at the time, and made the purchase within three or four days after coming to Iroquois county ; that he had fulfilled his contract. He states positively that he had no conversation with Trescot before he bought the land ; that no one told him the land had been sold, and he did not know it, and that he had no information that appellee was in possession when he purchased; that he told no person that when he purchased he intended to make appellee pay something for his claim and give him a road over the land.

In his evidence given on the trial below, Sill swears that he acted as land agent for the company at Clifton ; that appellant, on the 12th of August, 1867, made application to purchase this with other lands ; that the map showed this land for sale ; that appellant paid him $236, one-half of which was on the purchase of this land, and the money was remitted to the cashier of the land department of the company at Chicago; that a

contract for the conveyance was issued by the company on the
16th of that month; that in making sales they were governed
by the map; that he knew nothing of the purchase of this
land by appellee; that all applications to him were subject to
approval by the company's land commissioner at Chicago.

On the trial, Waters, the cashier of the land department,
testified, that the land business is transacted by the land com-
missioner, secretary and cashier, and contracts are executed by
them; that they, on the 15th of August, 1867, received of
appellant, through Sill, $236, and a voucher passed to the sales
department to be acted upon; that on the next day Shells-
wick forwarded $360, which was received on account of appellee
for the purchase of the land, and a voucher passed to the sales
department for action; that Shellswick had then been in the
employment of the company about two years.

Calhoun testified, that he was the commissioner of the land
department of the company; that the land business was under
his general charge, and land contracts were executed by himself,
the cashier and secretary, on the part of the company, and
also by the purchaser; that applications were received by
himself, or by clerks acting for him; that they were received
through station agents, commission agents, and often direct-
ly from the parties; that appellant's application was made
through Sill, the station agent at Clifton, on the 14th day of
August, 1867; the application, with the money for the first
payment, was received at his office on the 14th of the same
month, and the contract was issued on the 16th to appellant;
that Sill telegraphed on the 12th, inquiring whether the land
was for sale, and he replied it was; on the 14th Sill tele-
graphed that he had sold it at $10 per acre; that at that time
the records showed no other application to purchase this land,
and he knew of no other; that Sill, or any other agent, had no
authority to bind the company for the sale of lands, until the
application was received by the commissioner at the land
department; that it was the rule to confirm the application of
the party whose money was first received, unless particularly

304          DAVIDSON *v.* PORTER *et al.*          [Sept. T.,

Opinion of the Court.

informed that application had been made and the money paid
to a country agent, whose duty required him to receive the
application and money, and report; that Shellswick was em-
ployed by the company, and received and reported applications
for sale of lands; that Shellswick paid into the office for appel-
lee, $360, on the 16th of August, 1867, for the purchase of this
land; that this money was returned to Shellswick for appellee,
who refusing to receive it, it was held by the company, await-
ing the result of the suit; that they had offered to return the
money to appellant if he would surrender the contract, but he
had declined; that subordinate agents had no authority to place
applicants in possession of lands of the company, and Shells-
wick had no other or different authority.

On the trial below, Shellswick testified, that he was a trav-
eling land agent for the company; that he agreed with appellee
that he should have the land for $360 cash in hand, which was
a deduction of ten per cent from the price on a sale on time; that
when appellee paid him the $200, he desired witness to retain
the money until he could obtain the balance, so as to have the
benefit of a cash sale; that appellee agreed to pay the balance in
one or two months; that he afterward, in March, paid $100
more, and asked him to wait until the 5th of May for the bal-
ance; he consented to wait, and not sell the land until the latter
date; that appellee knew that witness could not send the money
forward in installments and have it treated as a cash sale,
and he told appellee so many times; that on the day he sent
the money for appellee, Sylvester and appellant called to see
whether the land had been sold, and he informed them it had
not, but appellee had agreed to buy but had not actually
bought it, as he had not paid for it; that he did not report the
payments made by appellee, and when he sent the money
for appellee, he furnished of his own means the balance required
to make up the requisite sum. Witness says he had no authority
to sell lands on terms different from the rules of the company;
had no authority to sell on cash terms and give time on the
purchase; the arrangement between him and appellee was

individual, and not with the company; that he had no authority to bind the company by such an arrangement.

Has appellee on this evidence any right to the relief he asks? He fails to show any binding contract with the company. It is true, he paid a part of the price to the agent of the company, but with directions that he should retain it, and not send it to the proper officer of the company. He had not parted with the title to the money. He could, at any time, have refused to go on with the purchase, and have recovered it back. The company never had any contract with him which they could enforce. They had no claim to the money paid Shellswick. It was only deposited with him as appellee's banker until he could procure the balance, and then, and not till then, did he intend that his application to purchase and his money should be sent to the company's land agents authorized to make sales. Shellswick and Sill were not empowered to do any thing more than receive applications, give receipts for money, and forward them to the proper officers. And appellee was fully apprised of the fact by Shellswick, and chose, for the purpose of saving ten per cent on the price, to prevent an application from being made for a purchase on time. They had no authority to make sales or binding contracts for sale of lands. A person purchasing of an agent is bound at his peril to see that the agent has authority to make a sale. *Peabody* v. *Hoard,* 46 Ill. 242.

Then, the appellee having no contract of purchase with the company, and appellant having paid his money and entered into a contract with the company before appellee made his application to purchase, we are at a loss to perceive how appellant has become the trustee of, or holds, this property for appellee. It is insisted that appellant had notice, actual or constructive, of appellee's rights. Grant it. Then we have seen he had no agreement with the company, but has only shown that he intended to, and was preparing to purchase when he should obtain the requisite sum of money. He had an agreement that when he raised a certain sum of money he

20—57TH ILL.

might become the purchaser, but this agreement was not with or binding on the company. It at most amounted to a proposition by the agent, that if he would pay $360 he should have the land, but the proposition was not complied with, as the money was not paid until after the sale to appellant. He had not agreed with the proper agents of the company, or even proposed to them to purchase. They had not agreed to sell him the land, or he to pay the money, but had placed his money in the hands of Shellswick to keep until he obtained the balance of the sum, and he then intended to make application to become the purchaser.

Nor did the receipt given by Shellswick evidence a contract. Appellee did not have the remotest intention to purchase on credit, and he knew that to purchase for cash all the money had to be paid in hand,—Shellswick swears he repeatedly so informed him. We are at a loss to understand how he could have understood it to amount to a purchase, as he was bound to nothing, and had not even notified the company, or those authorized to act for it, that he even expected to become a purchaser. The minds of the parties must come together on the terms and conditions of an agreement before there can be a contract. And we fail to find that such was the case in this transaction. At most it was only the intention of appellee to purchase when he obtained the balance of the money, and of Shellswick to then make the application, which would be either accepted or rejected by the officers empowered to sell, according to the usage of the company. In this no element of a contract that can bind either party is perceived.

Appellant denies, unequivocally, that he knew who owned the fencing on the ground; that he had ever heard of any purchase by appellee, or had any knowledge of the fact. It is true, Trescot swears that appellant stated to him before he purchased, that he believed that appellee's contract was not regular, and he could hold the property if he purchased. Appellant denies the conversation; and when we consider that

he was a stranger in the country, only having been there three or four days at most, it would be out of the ordinary course of human action for a stranger to talk to a neighbor of appellee about purchasing land for which he had a contract, and thus making a speculation, and we are inclined to believe that Trescot is at least mistaken, and that the conversation, if it occurred, was after appellant had purchased. He would not have been inclined to publish the fact in appellee's immediate neighborhood of his design to obtain such an advantage.

And the evidence, we think, establishes the fact that appellant had purchased before he and Sylvester called on Shellswick, and he informed them of what appellee had done and intended to do in regard to the purchase, as he says he sent the money on that day, and appellant's money was received one day in advance of appellee's. Appellant clearly paid his money first, and obtained the contract. The entire evidence fails to establish a purchase by appellee, and his unauthorized possession could only charge appellant of the facts as they existed; and there being no purchase by appellee, he has established no right to the relief sought.

The decree of the court below is reversed, at the costs of Porter, and the cause is remanded.

*Decree reversed.*