---

(No. 12153.—Appellate Court reversed; municipal court affirmed.)
THE CARSTENS PACKING COMPANY, Plaintiff in Error, *vs.*
STERNE & SON COMPANY, Defendant in Error.

*Opinion filed December 18, 1918—Rehearing denied Feb. 7, 1919.*

1. CONTRACTS—*interpretation of written contract is a question
of law and not of fact.* Where a contract consists wholly of let-
ters and telegrams its construction is a matter of law for the courts
and is not a question of fact, and in such case a finding by the
Appellate Court as to what the contract was is a conclusion of law.

2. SAME—*when interpretation of contract is a mixed question
of law and fact.* If the construction of a written contract depends
not only upon the meaning of the words employed but also upon
extrinsic facts or the construction placed upon it by the parties,
then, if the facts so proved are controverted, the question as to
what the contract was is a mixed one of law and fact, to be sub-
mitted to the jury.

3. SAME—*what does not defeat a recovery under statement of claim.* Where a statement of claim in the municipal court alleges a brokerage contract with the defendant by which the defendant agreed to buy for the plaintiff a car-load of turkeys of choice quality, the fact that the cause of action alleged and proved without objection is that the defendant did not require the seller to furnish turkeys of choice quality will not defeat a recovery for breach of the defendant's contract.

WRIT OF ERROR to the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. SHERIDAN E. FRY, Judge, presiding.

FREDERICK A. BROWN, (E. B. VANVEEN, of counsel,) for plaintiff in error.

ROSENTHAL, HAMILL & WORMSER, CHARLES H. HAMILL, and HARRY MARKHEIM, of counsel,) for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The plaintiff in error, the Carstens Packing Company, sued the defendant in error, the Sterne & Son Company, in the municipal court of Chicago, and filed the following statement of its claim: "Plaintiff's claim is for damages for a breach of a brokerage contract, whereby, on or about October 28, 1910, defendant agreed to buy for plaintiff at a given price a car-load of turkeys to be shipped to plaintiff at Tacoma, Washington, promising that the same would be of choice quality, and defendant thereafter bought of the United States Packing Company, and had shipped to plaintiff at said price, a car-load of turkeys but did not require said seller to furnish turkeys of choice quality, and said carload was, in fact, of inferior quality, worth in the market $2060.68 less than the market price of said car-load if of the quality agreed upon with plaintiff." The defendant filed

its affidavit of merits, denying the alleged promise that the turkeys would be of choice quality or that it agreed with the plaintiff or with any other person that it would require the United States Packing Company to furnish turkeys of choice quality, and denied that the turkeys were of inferior quality or that they were worth less than the market price of turkeys of the quality bought by the plaintiff. The issue was tried by a jury and there was a verdict for plaintiff for $1648.33, and judgment was rendered on the verdict for that amount and costs. On appeal to the Appellate Court for the First District the judgment was reversed with the following finding of fact incorporated in the judgment: "That the evidence fails to show that the defendant promised that the merchandise would be of choice quality, that the bought-and-sold notes constitute the evidence of the contract which was made as to the merchandise, and that the plaintiff by its conduct accepted and ratified the contract so made."

The defendant offered no evidence as to the quality of the turkeys nor the market price, so that there was no controversy over the questions whether there had been a breach of the contract if the defendant contracted to buy for the plaintiff, as a broker, turkeys of choice quality and did not require the seller to furnish turkeys of such quality, nor as to the amount of damages. The contract was created solely by letters and telegrams, and being wholly in writing its interpretation was a matter of law for the court and not a question of fact for the jury or Appellate Court. The interpretation of such a contract, and the rights and liabilities of the parties under it, are matters of law resting exclusively in the court. (*Alton, Mt. Carmel and New Albany Railroad Co.* v. *Northcott,* 15 Ill. 49; *Sigsworth* v. *McIntyre,* 18 id. 126; *Streeter* v. *Streeter,* 43 id. 155; *Lintner* v. *Millikin,* 47 id. 178; *Linn* v. *Sigsbee,* 67 id. 75; *Ogden* v. *Kirby,* 79 id. 555; *Danziger* v. *Pittsfield Shoe Co.* 204 id. 145; *Dunn* v. *Crichfield,* 214 id. 292.) It is true that where the

construction of a written contract depends not only upon the meaning of the words employed but also upon extrinsic facts or the construction which the parties themselves have placed upon it, which is to be proved as any other fact, if the facts so proved are controverted then the question as to what the contract was is a mixed one of law and fact, to be submitted to the jury. (*St. Louis Nat. Stock Yards* v. *Wiggins Ferry Co.* 102 Ill. 514; *Turner* v. *Osgood Art Colortype Co.* 223 id. 629; *Harrison* v. *Thackaberry,* 248 id. 512.) In this case there was nothing except the letters and telegrams from which the meaning of the contract and the rights of the parties could be determined, and the finding of the Appellate Court as to the contract was a conclusion of law and not of fact.

On October 18, 1910, plaintiff wrote defendant with reference to buying turkeys, and on October 22 defendant answered that it would be pleased to purchase turkeys for the plaintiff, and said: "We want it strictly specified as to just what you want, and we will see to it that the shippers fill your order in accordance with your directions." On October 26 defendant wired plaintiff that the best place to buy turkeys was Texas; that it could get a car that would. reach plaintiff in time for Thanksgiving, advising ordering immediately, and saying, "These guaranteed choice fresh birds." On the same day defendant wrote referring to the telegram and saying: "The Chicago market at the present time is about twenty cents on turkeys, but a very poor selection of birds could be purchased at that price and the ones that we are offering you are guaranteed choice quality." On October 28 plaintiff wired defendant: "Can use one or two cars frozen turkeys as per your telegram; am afraid ship chilled unless chilled almost frozen," with further particulars. The next day plaintiff again wired the defendant giving directions for chilling turkeys and icing cars, saying, "Birds must be choice and routed Burlington and N. P." The same day defendant wired the plaintiff that

it had booked one car of turkeys but could not guarantee to get a second car to reach plaintiff before Thanksgiving, adding: "Wire City National Bank, Wichita Falls, Texas, that draft will be paid; answer." The same day defendant wrote a letter acknowledging receipt of the telegram of October 28, saying that it had booked one car and found that it omitted in its wire to state who would be making the draft, and that it was the United States Packing Company. A broker's note was sent to plaintiff dated October 29 and received by plaintiff on November 1, showing a sale to plaintiff, for account of United States Packing Company, 22 Fifth avenue, Chicago, of one car of dressed turkeys in barrels. There was nothing in the note concerning quality, but it contained the following: "Inspection—Guaranteed fresh-packed stock, to be properly chilled and shipped in properly refrigerated cars." On November 2 the plaintiff wrote the National Bank of Commerce, Seattle, Washington, which bank wired the Citizens National Bank, Wichita Falls, Texas, that it would guarantee the draft. On November 4 defendant again wired plaintiff to wire the Citizens National Bank, Wichita Falls, Texas, that it would honor draft of United States Packing Company for a car of turkeys, saying: "Expect get car started to-morrow; quality guaranteed." A corresponding broker's note was sent by the defendant to the United States Packing Company. On November 10 the United States Packing Company, at Wichita Falls, Texas, drew on plaintiff at Tacoma for $4123.12, to the order of the City National Bank of Seattle, and attached it to the bill of lading covering the shipment. The turkeys arrived in Tacoma on November 22 and were received by the plaintiff the next day and the draft was paid on November 23. On the latter date, as soon as the turkeys were received, plaintiff wired the defendant: "Turkeys poor; only once in a while one that would pass for choice; perhaps one out of fifty; customers rejected all as choice; had them all sold but none would

take them on account of quality," and asking the defendant to help make settlement.

Construing the letters and telegrams, which were the sole evidence of the contract between plaintiff and defendant, the proper interpretation is that defendant would buy for plaintiff a car-load of turkeys that were guaranteed to be choice, fresh birds. The defendant, doing business in Chicago as a broker and acting in that capacity, proposed to buy at a distant point in Texas a car-load of turkeys for plaintiff, and the purchase was to be of turkeys guaranteed of choice quality. This was the construction given to the contract by the Appellate Court in the finding that the evidence did not show a contract of the defendant that the turkeys would be of choice quality, but that court apparently considered that there was no cause of action if the defendant did not guarantee the quality of the turkeys. The statement of claim alleged that the defendant agreed to buy for the plaintiff a car-load of turkeys promising that the same would be of choice quality, but the cause of action alleged and proved was that defendant did not require the seller to furnish turkeys of choice quality. There was no objection to the statement, and if there was any variance from it in the proof the variance was waived by not objecting when an amendment could have been made. Considering that the statement alleged a brokerage contract and the breach of the same by failure to require the seller to furnish turkeys of choice quality, the fact that the contract was to buy turkeys guaranteed to be of choice quality would not defeat a recovery under the statement of claim.

The Appellate Court found that the plaintiff accepted and ratified the contract as shown by the bought-and-sold notes. The alleged ratification consisted of the receipt by plaintiff of a bought-note, a letter by plaintiff to a bank and a telegram of defendant to plaintiff, and the question whether the plaintiff thereby ratified the contract as the one authorized was one of law and not of fact. The bought-

note was received on November 1 and the next day the plaintiff wrote the National Bank of Commerce to wire that it would guarantee payment of draft. The bought-note showed a contract made by the defendant with the United States Packing Company. (*Saladin* v. *Mitchell,* 45 Ill. 79; *Murray* v. *Doud & Co.* 167 id. 368; *Eau Claire Canning Co.* v. *Western Brokerage Co.* 213 id. 561.) It contained nothing relative to the quality of turkeys to be shipped, and if it could be regarded as showing a purchase different from the one agreed upon, the defendant re-affirmed its contract with the telegram of November 4, eighteen days before the turkeys arrived and the defendant learned that they were not of good quality, in which it again asked plaintiff to wire the City National Bank that it would honor the draft and that defendant expected to get the car started the next day, and repeating, "Quality guaranteed." Plaintiff understood that a purchase had been made in accordance with the contract, as shown by its letter of November 23 stating the quality of the turkeys and asking defendant to co-operate with it in procuring a settlement. There was no waiver by plaintiff or ratification of a purchase not in accordance with the contract. The Appellate Court did not find any matter of fact in controversy different from the finding of the trial court but only recited in the supposed finding of fact conclusions of law.

It is argued that the judgment of the Appellate Court can be sustained on account of alleged errors of the trial court which required the reversal of the judgment regardless of the finding incorporated in the judgment of the Appellate Court. The court said, "I will instruct the jury orally in the case," and then read to the jury eleven separate written instructions. On objections and exceptions to certain of the instructions the bill of exceptions shows that the instructions were tendered to the court by the attorneys and each party objected to instructions offered by the other and read by the court. The jury, while consid-

ering their verdict, sent a written request to the court that the instructions should be sent to the jury room, but the court refused the request, against the objection of the defendant, as a violation of the statute, not to be evaded by saying that written instructions are oral. It is also insisted that instruction numbered 11 given at the instance of the plaintiff was erroneous and prejudicial because it ignored and omitted the element of ratification of the contract as made. By the instruction the court left to the jury the question of law as to what the contract was but did not include the question of law whether the bought-note, letter and telegram amounted to a ratification. There was no ratification, and neither that question nor the question what the contract was should have been submitted to the jury, but defendant was not harmed because the contract was as stated in the hypothesis of the instruction. The instructions were erroneous and conflicting. They submitted to the jury questions as to what the contract was and whether there was a ratification, and in one instruction advised the jury that if there was a ratification by accepting the turkeys and paying for them the plaintiff could not sue the defendant for damages for not complying with the contract, while in another it was stated that the purchaser of goods not of the quality represented can keep the goods and sue for the difference in market value. The instructions, if sent to the jury, would only have confused and perhaps misled them, and as no other verdict could have rightfully been returned, the Appellate Court could not have reversed the judgment for refusal of the court to allow the jury to examine the instructions.

The judgment of the Appellate Court is reversed and the judgment of the municipal court is affirmed.

*Judgment of Appellate Court reversed.*
*Judgment of municipal court affirmed.*