## El Reno Wholesale Grocery Company, Appellee, v. George E. Stocking, trading as George E. Stocking Canning Company, Appellant.

### Gen. No. 6,678.

1. Brokers, § 16*—*duty of one dealing with third person through broker to ascertain latter's authority.* It is the duty of one dealing with a third person through a broker to ascertain the extent of the broker's authority, and he acts at his peril if the broker exceeds that authority.

2. Brokers, § 9*—*when broker has no authority to fix time of shipment of commodity sold.* Authority to a broker to sell a certain amount of a commodity at a certain price does not confer on him authority to fix the time of shipment.

3. Contracts, § 44*—*modified acceptance as rejection of proposition.* An acceptance of a proposition with modifications constitutes in law a rejection of it, and the substitution in its place of a new proposition which, to constitute a contract, must itself be accepted by the other party.

4. Sales, § 18*—*when offer to purchase goods not accepted.* An offer for a certain quantity of goods at a certain price "to be shipped the first half of September," is not accepted by a reply confirming the sale, but saying "shipment to be made in September," especially

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

where it appears that it would have been impossible for the seller to have made the shipment at the time stated in the offer, and it is immaterial on the question of the existence of a contract that the purchaser would have accepted a delivery made at the time stated in the counter-proposition.

5. CUSTOMS AND USAGES, § 14*—*when contract presumed made with reference to existing usage or custom.* Contracts made in the ordinary course of business without particular stipulations, express or implied, are presumed to be in reference to any existing usage or custom, relating to such trade, and it is always competent to resort to such usage to ascertain and fix the terms of the contract.

6. CUSTOMS AND USAGES, § 30*—*effect of "bought and sold notes."* Instruments, known as "bought and sold notes," exchanged in negotiations for the sale of certain groceries, may be shown by the general custom and usage in force in the grocery trade at and long before the time of such negotiations not to constitute the completed contract but as contemplating the drafting and submission of a written contract by the seller to be signed by the parties.

Appeal from the Circuit Court of Ogle county; the Hon. JAMES S. BAUME, Judge, presiding. Heard in this court at the April term, 1919. Reversed with finding of facts. Opinion filed October 14, 1919.

CHARLES V. CLARK and J. C. SEYSTER, for appellant.

WIRICK & WIRICK and FRANC BACON, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

In 1916 and 1917, George E. Stocking was engaged, under the trade name of George E. Stocking Canning Company, at Rochelle, Illinois, in the business of canning corn, peas and other food products for the wholesale trade. At the same time the El Reno Wholesale Grocery Company, a corporation, was engaged in the wholesale grocery trade at El Reno, Oklahoma, and Fred W. Heryer was engaged in the wholesale grocery brokerage business under the name of McManus Heryer Brokerage Company, with a main office in Kansas City, Missouri, and branch offices at Oklahoma City,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Oklahoma, and elsewhere. The grocery company claims that in October 1916, it made a contract with Stocking through said brokerage company to sell and ship to it a certain amount of canned corn in 1917 at a certain price; that Stocking did not fill the contract; that the price of such corn became very much higher in 1917; and that it was greatly damaged by the failure to fill the contract. It brought this suit to recover damages for said breach of contract. The general issue was pleaded and there was much special pleading, of which we think it sufficient to say that the questions herein discussed were presented thereby. A jury was waived and there was a trial and a finding and a judgment for plaintiff in the sum of $1,929.25, from which defendant appeals.

If there was a contract between plaintiff and defendant, it was through said brokerage firm, acting as the agent of defendant, or as an agent for both parties. In dealing with defendant through said broker, it was the duty of plaintiff to ascertain the extent of his authority, and plaintiff acted at its peril if the agent exceeded his authority. *Davidson v. Porter,* 57 Ill. 300; *Jackson Paper Mfg. Co. v. Commercial Nat. Bank,* 199 Ill. 151, and numerous other cases. Perhaps the latest expression of this doctrine is in *Merchants' Nat. Bank of Peoria v. Nichols & Shepard Co.,* 223 Ill. 41, where it is said: "Persons dealing with an assumed agent are bound, at their peril, to ascertain not only the fact of the agency, but the extent of the agent's authority. They are put upon their guard by the very fact that they are dealing with an agent, and must, at their peril, see to it that the act done by him is within his power. It is their right and duty to ascertain the extent of his power, and to determine whether his act comes within the power and is such as to bind his principal. (Mechem on Agency, sec. 276; *Reynolds v. Ferree,* 86 Ill. 570; 1 Am. & Eng. Encyc. of Law, 2nd Ed., 987.) An agent cannot con-

396     APPELLATE COURTS OF ILLINOIS.

El Reno Wholesale Grocery Co. v. Stocking, 215 Ill. App. 393.

fer power upon himself, and therefore his agency or authority cannot be established by showing either what he said or did. (*Proctor v. Tows,* 115 Ill. 138; *Mullanphy Sav. Bank v. Schott,* 135 Ill. 655.)'' The only authority the broker had to make this sale and bind Stocking thereby is contained in the letter from Stocking to the broker, dated September 28, 1916, and in evidence as Exhibit ''P.'' Besides other matters in that letter, Stocking therein made a price of 75 cents for standard corn of the 1917 pack, and said that the broker might sell 15,000 cases of standard corn at said price, f. o. b. factory, Rochelle, Illinois. No authority was given him to fix the manner or time of payment or the time of delivery. Under date of October 14, 1916, the broker prepared two memoranda in evidence as Exhibits ''I'' and ''J,'' which plaintiff insists are what is known in the brokerage business as bought and sold notes, and which defendant insists are only sales memoranda. They are both addressed to Stocking, and Exhibit ''I'' says that the broker has confirmed sale to plaintiff, 2,000 cases of No. 2 standard corn at 75 cents, to be shipped the first half of September, 1917, ''terms regular,'' f. o. b. factory, 60 per cent delivery guaranteed, ''as per wire to-day to seller.'' That was, on October 16, mailed to plaintiff. Exhibit ''J,'' which was mailed to defendant on October 14, began: ''We have sold subject to confirmation,'' and it was in all other respects like Exhibit ''I.'' The broker also, on October 14, sent two telegrams to Stocking, advising him of this sale, and asking immediate confirmation. Upon receiving one of those telegrams, defendant, on October 14, wrote to the broker confirming the sale, but saying, ''shipment to be made in September.'' The proof shows that that grade of corn is never packed at Rochelle until after September 15, and is never ready for shipment in the first half of that month. The broker had no authority to fix the time of shipment, and if plain-

tiff had made the inquiry required by the rule of law above stated, it would have ascertained the broker's lack of authority on that subject. Defendant, therefore, could only be bound by these bought and sold notes or sales memoranda, if he thereafter accepted the terms proposed. It is held in many Illinois decisions, including *Anglo-American Provision Co. v. Prentiss,* 157 Ill. 506, that "an acceptance of a proposition with modifications constitutes, in law, a rejection of it, and the substitution in its place of a new proposition, which, to constitute a contract, must itself be accepted by the other party." This was approved in *Davis v. Fidelity Fire Ins. Co.,* 208 Ill. 375, where it is also said that even if the reply to an offer stated but slight variations, it cannot be regarded as the consummation of a contract, but requires an acceptance upon the terms thus stated, and until unequivocally accepted is but a mere proposition or offer. This is repeated in *Scott v. Fowler,* 227 Ill. 104, where it is said: "An aceptance must conform exactly to the offer, and if it contains new conditions there is no contract." By Exhibits "I" and "J," the supposed bought and sold notes, the goods were to be shipped from Rochelle in the first half of September, 1917. This was not only an unauthorized element of the proposed contract, but it was one which under the proofs defendant could not fulfil. By his reply thereto, defendant so modified the proposition as to give himself the whole month of September in which to make delivery. This was a material departure from the terms proposed, and did not constitute an acceptance. Plaintiff replies to this by saying that it would have accepted the goods if they had been delivered the last half of September, and therefore the qualification was immaterial. That is not the point at issue. The question is whether there was a contract. Defendant replied with a material variation of the terms offered. Plaintiff never accepted the change, and

398    APPELLATE COURTS OF ILLINOIS.

El Reno Wholesale Grocery Co. v. Stocking, 215 Ill. App. 393.

never notified defendant that it would accept shipment any time in September. We are therefore of opinion that the minds of the parties never met, and that defendant never became bound to deliver these goods.

It was proved and not disputed that in the making of such contracts in the grocery business throughout the United States there is a general custom and usage in force in 1916 and for many years prior thereto that when the sale of such goods is for future delivery, the exchange of notes like Exhibits "I" and "J" is not understood to constitute a completed contract, but that, before any contract is made, a written contract shall be prepared by the seller and submitted to the buyer, which he may or may not sign. It is shown that each shipper has a form of printed contract on hand for such cases; that some times different shippers have the same precise form and other shippers have forms of the same general terms. There is in evidence as Exhibit "K" such a printed form prepared by Stocking for his use, and he testified that, in all his experience in the canning business for wholesale delivery, he had never made a future sale or known of such a sale having been made and carried out without a written contract, signed by the parties. This printed form provided for determining what discount should be allowed for cash and how long after the goods were shipped the right to a discount would remain. It provided what the rights of the parties should be in case of a partial failure of the crops, and in case of the destruction of the crop by causes beyond Stocking's control, and that the seller would not ship less than a carload, and it had a blank to fix the date to which time swells would be guaranteed, and provided for arbitration if there was any dispute as to quality. Plaintiff contends that Exhibits "I" and "J," the bought and sold notes, constituted a contract in themselves and could not be varied by any usage or custom. It is said in *Eau Claire Canning Co. v. Western Bro-*

*kerage Co.,* 213 Ill. 561, on p. 585, that contracts made in the ordinary course of business without particular stipulations, express or implied, are presumed to be in reference to any existing usage or custom relating to such trade, and that it is always competent to resort to such usage to ascertain and fix the terms of the contract. We are therefore of the opinion that the usage in question, which was clearly proven, shows that Exhibits "I" and "J" were not intended by any of the parties to constitute a binding contract between the parties, but that it was intended that when the general terms had been accepted defendant should prepare a written contract on his form and submit to the buyer, and that each of said parties should execute said written contract before they were bound. This expectation of all the parties that these negotiations were only to lead up to a future written contract is emphasized by subsequent correspondence between defendant and the broker and by a subsequent interview between defendant and the broker and the manager of plaintiff, wherein the broker and plaintiff were urging defendant to prepare and send on the written contract. We are of opinion that it was not until the spring of the following year that the effort to get a written contract was abandoned by plaintiff and the broker, and it was determined to claim that Exhibits "I" and "J" constituted a contract. Because no such written contract was prepared and executed, we are of opinion that a valid contract for the delivery of this corn never existed.

Defendant urges several other reasons, which we have not herein referred to, why this judgment cannot stand, but we deem it unnecessary to consider them. The judgment is therefore reversed.

*Reversed with finding of facts.*

Finding of facts to be incorporated in the judgment. We find from the evidence that the minds of plaintiff and defendant never met upon all the material terms

of a contract between them, even under the bought and sold notes in evidence; and also that the negotiations between the parties were subject to the general usages and customs of the wholesale canning and grocery trade, and that it was the general usage and custom of the trade and the intention of these parties that a printed and written contract should be prepared and executed by them, embodying agreements on various subjects not mentioned in said bought and sold notes, before the contract should be completed, and that such a contract was not executed; and that upon the evidence in this record defendant is not indebted to plaintiff.