(No. 13169.—Judgment affirmed.)
. THE EL RENO WHOLESALE GROCERY COMPANY, Plaintiff in
Error, *vs.* GEORGE E. STOCKING, Defendant in Error.

*Opinion filed June 16, 1920.*

1. APPEALS AND ERRORS—*finding of ultimate facts by Appellate Court in an action at law is binding upon Supreme Court.* Where controverted questions of fact are involved on the record of an action at law which is reviewed by the Appellate Court and that court·reverses the judgment of the trial court, a finding of all the ultimate facts in the Appellate ·Court's judgment is binding upon the Supreme Court.

2. CONTRACTS—*evidence of custom or usage is admissible to explain terms of contract.* A custom or usage which is repugnant to the terms of an express contract is not permitted to operate against it and evidence of usage is not admissible to contradict what.the contract plainly expresses, but if the terms of the contract are in any way uncertain such evidence is admissible to explain the terms, as it is presumed that the contract was made in the light of the custom or usage.

3. SAME—*whether preliminary negotiations shall be binding depends on intention of parties.* Parties may postpone conclusion of their contract until the terms are embodied in a formal instrument, and the question whether the preliminary negotiations are binding before the contract is drawn depends·upon intention of the parties.

4. SAME—*contracts in ordinary ·course of business are subject to custom or usage of trade.* Contracts made in the ordinary course of business, without any particular stipulations, are presumed to be made with reference to any existing usage or custom relating' to such trade, and it is always competent to resort to evidence of such usage to ascertain the terms of the contract.

5. SAME—*acceptance must conform to the offer.* The acceptance of an offer, to be binding, must conform exactly to the offer, and if it contains new conditions there is no contract.

6. BROKERS—*a broker's authority is limited to express instructions and usages of trade.* A broker is a special agent for a single object and cannot bind the principal beyond the limits of his authority, and while, ordinarily, he has implied authority to do everything necessary to effect the business about which he is employed, such authority is restricted by express instructions and the usages of trade.

7. SAME—*customer giving an order to a broker is presumed to authorize him to transact the business according to custom.* A cus-

tomer in giving authority to a broker to negotiate a transaction in a certain trade or market is presumed, in the absence of evidence to the contrary, to have authorized the broker to transact the business in question in accordance with the rules, customs and usages prevailing in that trade or market.

8. SAME—*party dealing with a broker is bound to ascertain extent of his authority.* Any person dealing with a broker is bound to ascertain the extent of the broker's authority and acts at his peril if the broker exceeds his authority.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Ogle county; the Hon. JAMES S. BAUME, Judge, presiding.

WIRICK & WIRICK, and FRANC BACON, for plaintiff in error.

J. C. SEYSTER, and JEFFERY, CAMPBELL & CLARK, (CHARLES V. CLARK, of counsel,) for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error, the El Reno Wholesale Grocery Company, brought an action of assumpsit in the circuit court of Ogle county against defendant in error to recover damages for the alleged breach by him of a contract for the sale of certain canned corn. Defendant in error pleaded the general issue and also filed certain special pleas. A jury was waived and trial had before the circuit judge, and judgment was entered for plaintiff in error in the sum of $1922.25 for damages for failure to deliver said corn. On appeal to the Appellate Court for the Second District the judgment of the circuit court was reversed with a finding of facts, stating, among other things, that the record did not show that defendant in error was indebted to plaintiff in error. The cause was brought by petition for *certiorari* from the Appellate Court to this court.

In 1916 and 1917 George E. Stocking was engaged, under the trade name of the George E. Stocking Canning

Factory, at Rochelle, Illinois, in the business of canning corn and other food products for the wholesale trade. At the same time the El Reno Wholesale Grocery Company, a corporation, was engaged in the wholesale grocery trade at El Reno, Oklahoma, and Fred W. Heryer was engaged in the wholesale grocery brokerage business under the firm name of McManus-Heryer Brokerage Company, with offices at Kansas City, Missouri, Oklahoma City, Oklahoma, and elsewhere. The grocery company argued, and the evidence offered by it tends to show, that in October, 1916, said company entered into negotiations through said brokerage company, whereby Stocking was to sell and ship to the grocery company a certain amount of canned corn in 1917 at a certain price and that Stocking did not fill the alleged contract; that the price of corn became very much higher in 1917, and that the grocery company was greatly damaged by the failure to fill the contract. The only authority the broker had to make this sale and bind Stocking thereby is contained in a letter from Stocking to the broker dated September 28, 1916, which stated, among other things, that Stocking made a price of seventy-five cents for standard corn of the 1917 pack, and that the broker might sell 15,000 cases of standard corn at said price f. o. b. factory, Rochelle, Illinois. Nothing is said in the letter as to the time of payment or the time of delivery. October 14, 1916, the broker prepared two memoranda, found in evidence as exhibits "I" and "J," which plaintiff in error insists are what is known in the brokerage business as "bought and sold notes," and which counsel for defendant in error argue are only mere sales memoranda. They were both addressed to Stocking, and exhibit "I" says that the broker has confirmed sale to plaintiff in error of 2000 cases of No. 2 standard corn at seventy-five cents, to be shipped the first half of September, 1917, "terms regular," f. o. b. factory, sixty per cent delivery guaranteed, "as per wire to-day to seller." Exhibit "I" was mailed to the defendant in error two days later. Ex-

hibit "J" was mailed to defendant in error October 14, and stated, among other things, "We have sold subject to confirmation." In other respects it was substantially like exhibit "I." On October 14 the broker also sent two telegrams to Stocking advising him of this sale and asking immediate confirmation. Upon receiving one of those telegrams defendant in error on October 14 wrote to the broker confirming generally the sale, but also included the statement, "Shipment to be made in September." The evidence shows that No. 2 standard corn was never packed at Rochelle until after September 15 of any year and was never ready for shipment in the first half of that month. The word "packed" seems to be used by canners with the same meaning as "canned."

The evidence offered by defendant in error and not disputed showed that in the making of such contracts in the wholesale grocery business in the United States there was a general custom and usage in force in 1916, and for many years prior thereto, that when the sale of such goods is for future delivery the exchange of notes like exhibits "I" and "J" is not understood to constitute a completed contract, but that before any contract is understood to be made, a formal written contract will be prepared by the seller covering the entire details of the transaction, which will be submitted to the buyer, which he may or may not sign. The evidence also shows that each different shipper has his own form of printed contract on hand for such cases. There is in evidence, as exhibit "K," such a printed form prepared by Stocking for his use, and he testified that in all his experience in the canning business for wholesale delivery he had never made or known of a future sale carried out without a written contract signed by the parties. This printed form provided a number of details that are not referred to in any way in the so-called memoranda or sales notes prepared by the broker. The broker's testimony tends strongly to show that he expected and required a written contract and

tried to get one in this case from defendant in error; that
he talked with defendant in error at Cleveland in Febru-
ary, 1917, about having such a written contract, and Heryer
testified that Stocking had agreed in that conversation to
prepare and send such a contract. Stocking himself testi-
fied that in Cleveland he had a talk with Heryer with ref-
erence to the contract but denied that he agreed to prepare
and forward such a contract. Heryer also admitted that
ordinarily in transactions of this kind a written contract
(after the first negotiations) was prepared, including the
details of the transaction, and signed later by the parties.
We think there can be no question from the evidence in
this record that both the buyer and seller, as well as the
broker, were well acquainted with this custom and usage
with reference to sales memoranda, and understood that
written contracts were afterwards prepared to incorporate
all the details of the transaction. Heryer testified that he
knew it had been defendant in error's custom to prepare
triplicate contracts for trades of this kind, the broker to
keep a copy on file, the buyer to have one and the seller to
have one, signed by both of the parties. On February 16,
1917, the broker wrote a letter to defendant in error in
which he referred to their conversation at Cleveland with
reference to a written contract, stating that up to that time
they had not received such a contract and that plaintiff in
error was making inquiries in regard to the same, and that
they would greatly appreciate it if defendant in error would
by return mail forward such a contract.

The Appellate Court in reversing the judgment of the
circuit court incorporated as part of the judgment the fol-
lowing finding of facts: "We find from the evidence that
the minds of plaintiff and defendant never met upon all
the material terms of a contract between them, even un-
der the bought and sold notes in evidence; and also that
the negotiations between the parties were subject to the
general usages and customs of the wholesale canning and

grocery trade, and that it was the general usage and custom of the trade and the intention of these parties that a printed and written contract should be prepared and executed by them embodying agreements on various subjects not mentioned in said bought and sold notes, before the contract should be completed, and that such a contract was not executed, and that upon the evidence in this record defendant is not indebted to plaintiff."

Counsel for plaintiff in error earnestly insist that this finding of the Appellate Court was not a finding of fact but a finding of law; that the contract upon which they based their action was created solely by letters, telegrams and the bought and sold notes, and, being wholly in writing, its interpretation is wholly a matter of law and not a question of fact, as held in *Carstens Packing Co.* v. *Sterne & Son Co.* 286 Ill. 355, and *Russo* v. *Ginocchio,* 288 id. 470. Counsel for defendant in error do not disagree with the law as urged by opposing counsel but insist that this alleged contract was not solely in writing; that it depended, in part, upon oral testimony as to the custom and usage with reference to such contracts, and that therefore the reasoning of this court in *Navratel* v. *Curtis Door and Sash Co.* 290 Ill. 526, must control here; that, as was said in that case on page 528, "wherever an issue is made by the pleadings and evidence must be introduced to maintain the issue, controverted questions of fact are involved in the case which include not only evidentiary facts but ultimate facts, even though there be no conflict in the testimony or the evidence may be agreed upon and embodied in a stipulation of facts."

Whether counsel for plaintiff in error or counsel for defendant in error are correct in their application of the law as to the finding of facts in this case depends upon whether or not the evidence as to the custom and usage with reference to a contract of this kind which was introduced in the trial court was proper to be introduced in a

transaction of this kind, as held by the Appellate Court. If such evidence was properly introduced and should be considered on this question then controverted questions of fact are involved on this record, and the judgment of the Appellate Court, if said court included in its findings of fact all the ultimate facts, would be binding upon this court. The general rule is that a custom or usage which is repugnant to the terms of an express contract is not permitted to operate against it and evidence of such custom or usage is inadmissible, for, while usage may be admissible to explain what is doubtful, it is never admissible to contradict what is plain. (12 Cyc. 1091. See, also, *Cadwell* v. *Meek,* 17 Ill. 220, and *Turner* v. *Osgood Art Colortype Co.* 223 id. 629.) But if the terms of the contract are in any way uncertain then such custom or usage is proper to be admitted in order to explain such terms, (*Steidtmann* v. *Lay Co.* 234 Ill. 84,) as it is presumed that such contract was made in the light of such custom or usage. Parties may postpone conclusion of contract until the terms are embodied in a formal instrument, and it may happen that though the parties are, in fact, agreed upon the terms,—in other words, though there has been a proposal sufficiently accepted to satisfy the general rule,—yet they do not mean the agreement to be binding in law until it is put into a formal writing. "It is not to be supposed 'because persons wish to have a formal agreement drawn up that therefore they cannot be bound by a previous agreement if it is clear that such agreement has been made, but the circumstance that the parties do intend a subsequent agreement to be made is strong evidence to show that they did not intend the previous negotiations to amount to an agreement.' Still more is this the case if the first record of the terms agreed upon is in so many words expressed 'to be 'subject to the preparation and approval of a formal contract.'" (Pollock on Contracts,—3d Am. ed.—47, and cited cases.) It is apparent from reading the decisions cited in the note to

that text that some nice distinctions have been made in different jurisdictions as to whether or not the contract had actually been entered into before the formal contract. was drawn and executed, but it is also apparent from reading those authorities, as well as the text in Pollock on Contracts, that the question resolves itself into a determination of the intention of the parties as to whether or not the preliminary negotiations should be considered a contract or whether the contract should not be considered binding until formal agreement had been drawn and executed.

"A valid contract may doubtless be made by correspondence, but care should always be taken not to construe as an agreement letters which the parties intended only as a preliminary negotiation. The question in such cases always is, did they mean to contract by their correspondence, or were they only settling the terms of an agreement into which they propose to enter after all its particulars were adjusted, which was then to be formally drawn up and by which, alone, they designed to be bound? The circumstance that the parties do intend a subsequent agreement to be made is strong evidence to show that they did not intend the previous negotiations to amount to an agreement.' " *Lyman* v. *Robinson,* 96 Mass. 242.

In a case where the parties contracted by telephone for the sale of grain, the evidence showed the existence of a custom governing such sales requiring the purchaser to send to the seller a written statement of the terms and conditions of the sale, and if such statement, when received by the seller, was not found to be according to his understanding the seller must object. The purchaser sent a statement following the telephone conversation and no objection was made. The trial court heard evidence of the contract as made by telephone and entered judgment accordingly, which judgment was reversed by the Supreme Court of Kansas on the ground that the written memorandum of the sale, under the custom proved to have been in existence, was

controlling and that the telephone conversation inconsistent therewith was superseded. *Strong* v. *Ringle,* 96 Kan. 573.

A binding slip was issued, which provided that it should become void upon the delivery of an insurance policy. No policy was ever delivered, as the risk was rejected, and it was held proper to show the existence of a custom that such binders should become void upon the rejection of the application; that they were only preliminary, to cover the risk pending the action of the company upon the application. *Underwood* v. *Insurance Co.* 161 N. Y. 413.

The fact that the evidence tends strongly to show that the broker did not have authority to bind defendant in error, under his authority as agent, by the contract that was made, lends additional support to the argument of counsel for defendant in error that the memoranda of sale and the correspondence thereafter by telegram or letter were not intended to be a binding contract until the details were all put into a formal contract to be thereafter executed. A broker is a special agent for a single object and cannot bind the principal beyond the limitations of his authority, and while, ordinarily, he has implied authority to do everything necessary to effect the business about which he is employed, such authority is restricted by express instructions or the usages of trade. (9 Corpus Juris, 524.) A customer in giving authority to a broker to negotiate a transaction in a certain trade or market is presumed, in the absence of evidence to the contrary, to have authorized the broker to transact the business in question in accordance with the rules, customs and usages prevailing in that trade or exchange. (9 Corpus Juris, 530.) Any person dealing with a broker is bound to ascertain the extent of the broker's authority and acts at his peril if the broker exceeds his authority. (*Davidson* v. *Porter,* 57 Ill. 300; *Merchants' Nat. Bank* v. *Nichols & Shepard Co.* 223 id. 41.) The only authority the broker had to make this sale was contained in a letter from Stocking heretofore referred to, and no

authority was given him to fix the manner or time of payment. The record shows, without dispute, that the grade of corn that was sold by him to plaintiff in error was never ready for shipment, after being canned, in the first half of September of any year. It was not until several months after the sales notes or memoranda referred to were executed by the broker, that the broker, or anyone representing the plaintiff in error, intimated that it was not necessary to have the details of the transaction put into a formal contract and thereafter executed. The documents introduced showed that not until April 26, 1917, did the broker himself claim that there was a binding contract made by the letters and telegrams in question. This court has held that contracts made in the ordinary course of business, without any particular stipulations, express or implied, are presumed to be made with reference to any existing usage or custom relating to such trade, and that it is always competent to resort to such usage to ascertain and fix the terms of the contract. (*Eau Claire Canning Co.* v. *Western Brokerage Co.* 213 Ill. 561.) Having in mind the custom or usage of the trade with reference to contracts of this kind as shown by this record, we think the evidence fully justified the conclusion of the Appellate Court that the parties did not intend to have a binding contract consummated until the details of the transaction were thereafter executed by a formal contract. This being so, there can be no question, by the weight of authority, that the evidence as to the customs and usages of the trade with reference to such contract were properly held admissible.

We think there is merit also in the argument of counsel for defendant in error that the correspondence and telegrams upon which counsel for plaintiff in error base their claim that the contract was in writing did not consummate a contract, considered by themselves. It is obvious from this record that the acceptance of the contract claimed to have been made by defendant in error was not an acceptance

in accordance with the terms of the other party, because such acceptance contained in the letter of defendant in error to the broker stated that the shipment, if made, was to be made in September, whereas the provision of the sales notes or memoranda was that the delivery was to be made the first half of September. In order to have the acceptance of an offer binding such acceptance must conform exactly to the offer, and if it contains new conditions there is no contract. *Scott* v. *Fowler,* 227 Ill. 104; *Davis* v. *Fidelity Fire Ins. Co.* 208 id. 375.

From our conclusions as to the law in this case it necessarily follows that the findings of fact by the Appellate Court are binding upon this court.

The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*