### Willis Scott et al. v. R. E. Fowler.

1. CONTRACT—*when acceptance of proposition does not complete.*
Where the parties make the reduction of their agreement to writ-
ing, and its signature by them, a condition precedent to its com-
pletion, the making and acceptance of a proposition does not con-
stitute a binding contract, and this notwithstanding all of the terms
of the agreement have been arrived at.

Action in *assumpsit.*   Appeal from the Circuit Court of Ver-

Scott v. Fowler.

milion county; the Hon. E. R. E. KIMBROUGH, Judge, presiding. Heard in this court at the May term, 1905. Affirmed. Opinion filed November 27, 1906.

D. M. JONES and W. M. ACTON, for appellants.

REARICK & MEEKS, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

This is an action in assumpsit by appellants against appellee. The declaration as originally filed contained one count to which a demurrer was interposed by appellee and sustained by the court. Thereafter, appellants, by leave of court, filed an additional count to which a demurrer was interposed, and sustained by the court, and thereupon appellants elected to abide their declaration and judgment was entered against them in bar of the action and for costs.

The additional count of the declaration, which contains all the averments upon which appellants predicate their right of action, alleges that on March 24, 1905, appellee was the owner of certain described lands in Vermilion county, containing 240 acres; that on said date appellee resided at Salt Lake City, Utah, and one Willie McGray, a resident of Vermilion county, was the agent of appellee for the sale of said lands, and had authority from appellee to sell the same; that on the day aforesaid, said McGray, as agent of appellee, made an agreement with appellants for the sale of said lands to them, whereby it was stipulated that appellants would purchase said lands for the consideration of $30,000, and appellee would sell the same for said consideration; that a deed should be made by appellee to appellants and possession given March 1, 1906; that appellants should pay into the hands of W. M. Acton, a third party, $1,000 as earnest money, and that the balance should be paid March 1, 1906, when a deed and possession

should be given by appellee; that a written agreement for the sale of said lands should be executed in duplicate between appellants and appellee, and upon delivery by appellee of a copy of said agreement, properly signed by appellee, to said Acton, or to some bank in Danville, Illinois, for said Acton, the said Acton should pay the $1,000 so held by him to appellee. The declaration sets out a copy of said agreement as drawn, and further alleges that on the day aforesaid appellants signed said agreement and delivered the same to McGray as agent of appellee for the purpose of having appellee sign the same; that thereupon McGray, through said Acton, wrote to appellee, as follows:

"March 24, 1905.

MR. R. E. FOWLER,
        Salt Lake City, Utah.

DEAR SIR: At the request of Mr. Will McGray I enclose herewith contract executed in duplicate between yourself and Thomas F. Collison and Willis Scott for the sale of your farm to them at $125.00 per acre, one thousand dollars cash and the balance the first of March, 1906, when possession is to be delivered. The one thousand dollars has been left in my hands and after you sign the contracts return two of them to me, or send them to any bank in this city as you may prefer and I am authorized to pay one thousand dollars upon receipt of contract. Please do so at once.

Yours truly,
        W. M. ACTON."

The declaration further alleges that said letter was received by appellee, and that in reply thereto appellee wrote to Acton, as follows:

"SALT LAKE CITY, 3-29, 1905.

WILLIAM M. ACTON, ESQ.
        Danville, Ill.

DEAR SIR: I received your letter and contract yesterday, contents duly noted, in regard to signing those contracts in which it is stated that I shall give pos-

session 1st of March, 1906.   This I cannot (under the contract I have signed with Mr. Purnell) do.   I think you are the attorney that drew up the contract for Mr. Purnell and you know that without Mr. Purnell was perfectly willing I could not agree to give possession on that date without causing trouble, now if they want to take the farm subject to the lease then I can talk trade with them otherwise I cannot.   I think Mr. Purnell for a small consideration would give them possession, they are getting the farm $25.00 per acre too cheap, nevertheless I will let them have it if they make terms with Purnell.   I will not sign contracts ᐧunder present circumstances. Awaiting your reply I remain as ever

Yours truly,<br>
R. E. FOWLER."

As the contract referred to in the foregoing letter, the declaration sets out a copy of a lease of the lands ·from appellee to Purnell for the term of two years beginning March 1, 1905, at a rental of $1,000 a year.

It is further alleged in the declaration that the last mentioned letter was received by the said Acton, April 1, 1905, and thereupon said Acton notified the appellants of its receipt and its contents, and appellants then immediately authorized and directed said Acton, for and in behalf of appellants, to write to appellee, as follows:

"April 1, 1905.

MR. R. E. FOWLER,
        Salt Lake City, Utah.

DEAR SIR:   Your letter dated March 29th just received.   Messrs. Scott and Collison are ·in my office, and I have read your letter to them in which you state that you will accept their proposition as set forth in the written contract if they will take it subject to the Purnell lease.   While they are very anxious to have possession the first of next March, they are willing to take their chances in making satisfactory arrangements with Mr. Purnell, and authorize and direct me to inform you that they hereby accept your proposition.

You can use the same contracts that I mailed you, by writing in after the words wherein it is stated that they shall have possession March 1st, 1906, the following words to wit: 'Subject to the lease of Samuel Purnell, the party of the second part to have the rent for the year 1906.'

As soon as the contracts are returned either to me or to the Palmer National Bank, the one thousand dollars will be paid as stated in my previous letter.

Yours truly,

W. M. ACTON.''

That after the last mentioned letter had been duly deposited in the post office at Danville, Illinois, on April 1, 1905, appellee conveyed the said lands to one Thomas A. Taylor for the consideration of $31,200 subject to the lease to Purnell, above mentioned.

The declaration further alleges that appellants have been at all times ready, able and willing to carry out the terms of the said agreement, and now are ready, able and willing to do so; that the said lands were at the time of the agreement, and now are, of the cash market value of $36,000, and that by reason of the act of appellee as aforesaid, appellants have been deprived of great gain and profits, to their damage, etc.

It is insisted on behalf of appellants that the correspondence set out in the declaration between W. M. Acton, acting for them, and appellee, constituted a complete contract between the parties for the sale and purchase of the lands for the consideration of $30,000, subject to the Purnell lease.

''An acceptance of a proposition of sale must be a simple acceptance according to the terms of the offer. An offer of a bargain by one person to another imposes no obligation upon the former until it is accepted by the latter according to the terms in which the offer was made.'' Gradle v. Warner, 140 Ill. 123.

The contract for the sale and purchase of the lands, signed by appellants, the prospective purchas-

Scott v. Fowler.

ers, and sent to appellee, the prospective seller, March 24, 1905, did not become binding upon appellee until signed by him. Neither the negotiations between appellants and McGray, the agent of appellee, antecedent to the execution of a contract by both parties, nor the execution of such contract by appellants alone, was binding upon appellee. The contract signed by appellants and sent to appellee was a mere proposal upon the part of appellants to purchase the lands upon the terms therein stated.

It was clearly contemplated by the parties that a formal agreement should be executed by them, before either should be bound. Appellants, manifestly, so understood it, because they executed such an agreement with knowledge that it was to be sent to appellee for his approval and signature, and subsequently, when appellee refused to sign the contract as drawn, Mr. Acton, then acting for appellants, requested or directed appellee to make certain changes in the contract and return it to Danville, and advised appellee that upon the return of the contract the money would be paid. The return of the contract executed by appellee was made a condition precedent to the payment of money. Appellee, as certainly, expected to be bound, only by a contract to be executed by both parties. The payment of the greater part of the purchase money was to be deferred until the deed was executed and possession given, and a contract was necessary to determine the time of payment. In his letter of March 29, appellee says: "If they (appellants) want to take the farm subject to the lease then I can talk trade with them, otherwise I cannot." And again, in the same letter appellee says: "I will not sign contracts under present circumstances." The subject-matter of the letter was the contract which had been signed by appellants and sent to appellee for his signature, and the letter should be in-

terpreted as relating to that contract, and not to a collateral, or independent agreement.

In B. & O. S. W. Ry. Co. v. The People, 195 Ill. 423, the court quotes with approval from the American and English Encyclopedia of Law (vol. 7, 2nd ed. p. 140) as follows: "Many cases occur where parties negotiating a contract contemplate that a formal agreement shall be drawn up and signed. The question arises, does such a contemporaneous understanding and agreement make the validity of the contract depend upon its being actually reduced to writing and signed. The true rule may be stated in these words: Where the parties make the reduction of the agreement to writing, and its signature by them, a condition precedent to its completion, it will not be a contract until that is done. And this is true although all the terms of the contract have been agreed upon. But where the parties have assented to all the terms of the contract, the mere reference to a future contract in writing will not negative the existence of a present contract."

In Lyman v. Robinson, 14 Allen (Mass.) 242, it is said: "A valid contract may doubtless be made by correspondence, but care should always be taken not to construe as an agreement letters which the parties intended only as a preliminary negotiation. The question in such cases always is, did they mean to contract by their correspondence, or were they only settling the terms of an agreement into which they propose to enter after all its particulars were adjusted, which was then to be formally drawn up, and by which alone they designed to be bound."

Considering the entire negotiations and correspondence of the parties alleged in the declaration relative to the purchase and sale of the lands, we are satisfied it was their intention to be bound only by the terms of a formal contract to be signed by them, and that the signing of such contract was a condition

precedent to its completion. Until such contract was signed it cannot be said that the minds of the parties have met upon the terms of the agreement. The demurrer to the declaration was properly sustained and the judgment will be affirmed.

*Affirmed.*