358

## Matthew Wawrzyniak and Josephine Wawrzyniak, Appellees, v. Morris Kohl, Appellant.

### Gen. No. 33,068.

Opinion filed April 17, 1929. Rehearing denied May 1, 1929.

GEORGE N. KOTIN and JAMES B. CASHIN, for appellant.

PINES, MORSE & STEIN, for appellees; CLARENCE T. MORSE, of counsel.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

This is an action of the first class in the municipal court, in which plaintiff on May 23, 1928, filed, by leave of court, a second amended statement of claim, supported by an affidavit. On the 25th day of May, 1928 (the motion upon which the order was entered not being

found in the record) the court entered the following order:

"On motion of the defendant heretofore entered herein to strike amended statement of claim from the files of this cause, and the court being fully advised in the premises, overrules said motion."

To the second amended statement of claim no pleading of defendant is found in the record. No order is found in the record permitting either of the two former affidavits of merits filed to stand or be regarded as an affidavit of merits to the second amended statement of claim. The next order found in the record is of June 7th, 1928, in which the cause is submitted to the court for trial without a jury. The trial was entered upon and continued until June 8, 1928, when the court entered a finding of the issues against the defendant Morris Kohl, and assessed plaintiffs' damages at the sum of $2,500. Motions for a new trial and in arrest of judgment were made by defendant and both overruled by the court, and this appeal prayed, allowed and perfected.

The action is grounded on the failure of the defendant to perform an alleged oral agreement to consent to the assignment of a written lease made between the plaintiffs, as lessees, and the defendant, as lessor. The second amended statement of claim alleges the execution of the lease, dated September 1, 1926, made by defendant as lessor to the plaintiffs as lessees, whereby a term of ten years was granted at a fixed rental of $400 per month of a six-flat building numbered 4051–4053 Kenmore Avenue, Chicago, to be occupied as a rooming house. Among other covenants it was provided that Morris Kohl, the lessor, would give his consent in writing for the assignment of said lease by plaintiffs upon being furnished with proof that the proposed assignee was a white person of equal responsibility to the plaintiffs with reference to moral

character and financial responsibility, and on further condition that at the time of such assignment a fee of $25 would be paid to defendant for giving his consent thereto.

Plaintiffs averred that they had personal property in the demised premises of the value of $10,000, and that they had built up a profitable business, which in the month of October, 1927, had a good will value of $10,000; that plaintiff Josephine Wawrzyniak was in bad health; that her husband was a tailor, and that they were unable to run the business successfully, and that on October 17, 1927, plaintiffs requested of defendant his consent to the assignment of the lease to one William Reinecke claiming that he fulfilled the conditions of the lease as to color, financial condition and moral responsibility, and offered to pay defendant $25 for his consent to such assignment; that on October 24, 1927, defendant agreed verbally to accept said Reinecke as such assignee of plaintiffs and that defendant was offered and accepted $10 on account of the $25 fee for such consent, and that plaintiffs in faith of the foregoing entered into an agreement in writing with said Reinecke to sell him all of the assets and good will of the leasehold and their interest in the lease for the sum of $5,000; that defendant upon being notified of the agreement between plaintiffs and Reinecke agreed to meet plaintiffs with Reinecke at the office of defendant's attorney, and that plaintiffs could then and there assign the lease to Reinecke and consummate the agreement if defendant would give his consent in writing to such assignment and accept Reinecke as assignee of the lease; that the parties met at the office of defendant's attorney on November 1, 1927, and Reinecke was ready, willing and able to consummate his purchase, but defendant refused to consent in writing to the assignment of the lease; that by reason of defendant's refusal to give his consent to the assignment of the lease to Reinecke, plaintiffs lost the benefit of the profit of their

contract with Reinecke, and that because plaintiffs were unable to run the rooming house business they had to employ certain persons to do so for them and they lost large gains in profits which they would have otherwise received, to their damage in the sum of $20,000.

It was further averred in said statement of claim that by agreement between plaintiffs and defendant, the defendant waived the requirement of the lease that the proposed assignee was to be a white person of equal responsibility to plaintiffs and the payment of $25, and in consideration therefor plaintiffs agreed to pay $1,200 to defendant as security for the performance of the covenants of the lease and of the payment by plaintiffs in advance of the maturity thereof an indebtedness from plaintiffs to defendant in the sum of $1,650 evidenced by mortgage notes secured by chattel mortgage on the furniture in the demised premises. It was also understood that the defendant would give his consent to the further assignment of the lease by Reinecke without Reinecke being required to obtain defendant's consent in writing thereto; that the agreement between plaintiffs and defendant stated that the $1,200 was to be forfeited as liquidated damages, although there is no proof of any agreement to that effect. It appears that on the morning when plaintiffs claimed the transaction was to have been completed, defendant made other exactions with which plaintiffs declined to comply, and the consent of the defendant to the assignment of the lease to Reinecke was refused, and the matter there ended.

Edward G. Berglund testified for defendant that he was an attorney and during the months of October and November, 1927, represented defendant with reference to the transaction in dispute; that he was present at the conversation between defendant and plaintiffs in the fall of 1927; that he had several conferences with plaintiffs and defendant and Mr. Kandlik; that he

dictated an agreement which he submitted to the parties; that Mr. Kohl, the defendant, said he would not sign the agreement because it gave plaintiffs the right to pass upon any subsequent assignee and that it did not give him that right, or words to that effect; that that was not the kind of agreement he wanted; that defendant should have the right to veto any subsequent assignment; that he told defendant he was getting the chattel mortgage paid off and certain other matters and Mr. Wawrzyniak still remained liable on the lease and that he (the witness) did not think it was reasonable to insist on putting that condition in, and defendant said he would insist on it; that the witness took exception to the fact that defendant, his client, did not comply with his advice in the matter, and therefore the relations of attorney and client between himself and defendant were severed, and he gave defendant back all of his papers; that defendant on being pressed to give his consent to the assignment, said that he would give his consent upon the chattel mortgage being paid in full; they then discussed the agreement and defendant still said he wanted the right to pass upon any subsequent assignee whoever it be, and would not heed plaintiffs' request that it be otherwise, saying he was landlord and wanted also to be able to pass on any subsequent assignee even if he did consent to Reinecke; that it was a difference of opinion between the witness and the defendant, his then client, in view of what he was getting on this lease that he ought to waive that; that was his opinion.

The witness testified on cross-examination that he drew the agreement and presented it to the parties on November 1, 1927, when all the parties were present; that it would substantially carry into effect the general agreement of the parties and as to what he thought was fair and reasonable to recommend to any client to execute for the transfer of the lease.

It is clear from the foregoing that the refusal of defendant to sign the agreement which Berglund had prepared, and to consent in writing to the assignment of the lease by plaintiffs to Reinecke, which resulted in the disagreement of the parties culminated in this suit.

The controlling question is one of law as to whether the lease between the parties regarding its assignment or any of its other provisions may be changed or modified by any verbal agreement between the parties, or whether it is a fast and firm principle of law that none of the provisions of the lease can be altered or varied (the lease being under seal) by parol or by any verbal understanding.

Plaintiffs contend that defendant does not come into court with clean hands. However this may be, it is sufficient to say on this point that the doctrine of clean hands is one wholly cognizable in equity, and is a stranger to the common law.

The evidence makes it clear that the agreement of the parties was that when the minds of the parties met upon all of the terms thereof it should be reduced to writing. While it is true that the defendant at the subsequent meetings of the parties increased his exaction as to the terms upon which he would consent to vary the provision in the lease regarding the necessity of defendant agreeing in writing to consent to an assignment of the remaining term of the lease to the nominee of plaintiffs, and while it may be that defendant attempted to exact more from plaintiffs for the concession than he in honesty ought in accord with the view of his attorney, yet we are not permitted to pass upon this contention on the morals of the situation, but upon the law governing the transaction. Defendant's counsel had a right to cease to advise his client for the good enough reason that he refused to be guided by his advice. That was counsel's privilege, but it did not

change the situation regarding the law applicable to the situation. However, Berglund's testimony, in itself, is sufficient to establish the fact that the proposed agreement varying the terms of the written lease, etc., was to be in writing.

It is the law that a contract under seal, such as the lease in the case at bar, can neither be modified nor changed by an agreement resting in parol. *Barnett v. Barnes*, 73 Ill. 216.

In *Baltimore & O. & C. R. Co. v. Illinois Cent. R. Co.*, 137 Ill. 9, it was held that it is not competent, either at common law or under the law of this State, to modify or change the terms of a lease or articles of agreement under seal by proof of a subsequent parol understanding or agreement. And as applied to the intention of the plaintiffs in the instant case, the rule is stated in *Baltimore & O. S. W. R. Co. v. People ex rel. Allen*, 195 Ill. 423, as follows:

"Where the parties make the reduction of the agreement to writing, and its signature by them, a condition precedent to its completion, it will not be a contract until that is done. And this is true although all the terms of the contract have been agreed upon."

The only difference in the statement of the foregoing principle of law as contrasted with the instant case, is that the terms of the parol agreement, which was to have been reduced to writing, were not agreed upon by the parties, and the minds of the parties upon the terms claimed to have been agreed upon by the plaintiffs never met in finality. As well said in *Nolan v. O'Sullivan*, 148 Ill. App. 316:

"If it was the understanding and intention of the parties to draft and sign a written contract covering their oral agreement, the oral agreement, without being reduced to writing and signed, is not binding and enforceable."

In *Scott v. Fowler,* 130 Ill. App. 172, it was held that:

"Where the parties make the reduction of the agreement to writing and its signature by them, a condition precedent to its completion, the making and acceptance of a proposition does not constitute a binding contract, and this notwithstanding all of the terms of the agreement have been arrived at."

On further review in 227 Ill. 104, the decision of the Appellate Court was affirmed.

In *Becker v. Becker,* 250 Ill. 117, it is written:

"Appellants' most serious contention in this court is that the decree should be reversed because it is based upon incompetent testimony. Appellants' position may be stated as follows: The ante-nuptial contract related to marriage, and was therefore required by the statute to be in writing. Since the original contract was an instrument in writing under seal, any new agreement altering or enlarging its terms must also be in writing in order to be valid. In support of this general proposition many authorities are cited, several of which are Illinois cases. If the rights of the parties depended upon the rule contended for by appellants no serious question could arise as to the correctness of the position assumed. There are many cases in this court that establish the rule, beyond controversy, that an executory contract under seal cannot be modified by parol, so as to introduce any new element into the contract or by which any new terms are added thereto. The rule contended for by appellants is thus announced by this court in *Alschuler v. Schiff,* 164 Ill. 298, where, on page 302, this court said: 'There can no longer be any contention in this State over the general rule insisted upon by appellee, that a sealed executory contract cannot be altered, changed or modified by parol agreement. This rule of the common law has been adopted by this court and consistently followed in

a long line of unbroken authorities,' citing *Chapman v. McGrew,* 20 Ill. 101; *Hume Bros. v. Taylor,* 63 id. 43; *Barnett v. Barnes,* 73 id. 216; *Loach v. Farnum,* 90 id. 368; *Goldsborough v. Gable,* 140 id. 269.

"The rule announced in these cases, and others in line with them, is too firmly established by the decisions of this court to be seriously controverted at this time."

The foregoing language is not only applicable to the conditions in the instant case, but determinative of the rights of the parties contrary to the contentions of the plaintiffs.

In consonance with the reasons above stated, the judgment of the municipal court is reversed and a judgment entered here for the defendant with costs against the plaintiffs here and below.

*Reversed and judgment here for defendant with costs against plaintiffs here and below.*

WILSON and RYNER, JJ., concur.